■ In the Matter of THOMAS TT., Alleged to be a Permanently Neglected Child. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; WESLEY TT. et al., Appellants.—Appeals from an order of the Family Court of Otsego County, entered March 15, 1977, which adjudged Thomas TT. a

permanently neglected child pursuant to section 611 of the Family Court Act, and permanently terminated his parents' right to custody. Thomas, now age 14, has been in five foster homes since 1971 when he was voluntarily surrendered to petitioner by his mother. In July, 1976, petitioner commenced this proceeding seeking to permanently terminate appellants' rights, alleging that notwithstanding petitioner's diligent efforts to encourage and strengthen the parental relationship, appellants had failed substantially and continuously or repeatedly to maintain contact with and plan for the future of Thomas although physically and financially able to do so. Following a hearing, the court concluded that petitioner had met its burden under section 384-b of the Social Services Law of establishing that Thomas was a permanently neglected child. Thereafter, appellants' parental rights were terminated and these appeals ensued. We have been informed that Thomas' mother died recently and, accordingly, we do not pass on the merits of her appeal. In addition to the appellants, the only people to testify were a caseworker who had begun working on the case since January 1, 1974, the Supervisor of the Cayuga Home, where Thomas presently resides, and a former foster parent of Thomas. The evidence overwhelmingly establishes that the appellant father neither maintained contact with nor planned for the future of Thomas during the period subsequent to the voluntary surrender of Thomas in 1971. There is, however, a complete failure of proof on the questions of whether petitioner made diligent efforts to encourage and strengthen the parental relationship and whether the appellant father was physically and financially able to maintain contact with and plan for the future of Thomas. As recently explained by this court, "In a proceeding constituting one of the most severe intrusions by the State into an individual's life—the *permanent* termination of his parental rights—the allegations in the petitions and the proof adduced at the fact-finding hearing should carefully adhere to the statutory requirements" *(Matter of Anita "PP",* 65 AD2d 18, 21). Here, there is no evidence that petitioner made any attempt to provide any of the services included by the Legislature in its definition of " 'diligent efforts' " (see Social Services Law, § 384-b, subd 7, par [f]). On the contrary, the caseworker admitted that he first contacted Thomas' father some 22 months after being assigned to the case and that he had only had two personal contacts with the father prior to filing the petition. Petitioner sought to justify its perfunctory approach to appellant upon the ground that diligent efforts to strengthen the parental relationship would not have been in the best interests of Thomas (see Social Services Law, § 384-b, subd 7, par [a]). The sole basis for this conclusion, however, was the opinion of the caseworker, which he based upon the father's lack of employment, inadequate housing and "reported drinking problem". The first two factors are directly related to the father's financial difficulties discussed hereafter and the third is not based upon first-hand knowledge. Moreover, the caseworker's admission that if Thomas' father "could get himself and his circumstances together * * * he would be a good parent" is in direct conflict with the contention that efforts to help the father would not be in Thomas' best interests. It is also noteworthy that petitioner made no attempt to advise the appellant father of the existence of any programs which might have helped him solve his problems. Next, the proof establishes that Thomas' father is destitute. He lives in an old school bus which his uncle converted into a hunting cabin, and he has no car or other means of transportation. His monthly income is approximately $60, and for a substantial period of time he was unable to visit his son because he was in jail for nearly one year and thereafter was unable to drive because he had lost his license.

Accordingly, petitioner has failed to sustain its burden of establishing that Thomas' father was physically and financially able to maintain contact with and plan for the future of Thomas. Finally, we note that there is a dearth of proof on the issue of Thomas' best interests. While Thomas' case history contains a recent evaluation report by a child guidance counselor indicating that Thomas needs long-term institutional care, and there was testimony that Thomas was doing well at the Cayuga Home, there was no expert testimony or evidence as to Thomas' present emotional development or needs; nor is there a transcript of the dispositional hearing or a basis given for the trial court's conclusion that termination of the father's parental rights was in the child's best interests. While we recognize that a strong possibility exists that the same result will follow remittal, we, nevertheless, feel that an order affecting a child's future should be bottomed on a dispositional hearing that includes professional testimony as to the child's best interests (see Family Ct Act, § 623). In this regard, we note that in *Matter of Bennett v Jeffreys* (40 NY2d 543, 549), the Court of Appeals held that unfortunate or involuntary extended disruption of custody is an extraordinary circumstance justifying intervention by the State in the right and responsibility of natural parents to the custody of their children, and upon a finding of such an extraordinary circumstance, the court may then proceed to inquire into the best interests of the child and to order a custodial disposition on that ground. In *Matter of Sanjivini K.* (40 NY2d 1025), the court directed that this rationale be applied to proceedings to terminate parental rights. Thomas' placement with petitioner since 1971 constitutes an extraordinary circumstance justifying intervention by the State and, accordingly, the matter should be remitted for a thorough inquiry into the best interests of Thomas and a custodial disposition on that ground (see *Matter of Leon "RR"*, 66 AD2d 118). Order reversed as to the appellant father, on the law and the facts, without costs, and matter remitted for further proceedings not inconsistent herewith. Appeal by appellant mother dismissed, without costs, by reason of her death during the pendency of the appeal. Mahoney, P. J., Greenblott, Sweeney and Mikoll, JJ., concur.

Herlihy, J., concurs in the following memorandum. Herlihy, J. (concurring). I concur in the conclusion of the majority that the present order must be reversed because of the failure of the Family Court to give due consideration to the statutory requirements necessary to support an order terminating the parental rights. The record demonstrates that there might be some basis for continuing the infant in custody of the petitioner and, thus, there is a necessity for further proceedings. While the court, upon further proceedings, should consider the fact that the 14-year-old infant has not been in the custody of his father since he was about seven years of age, there is no reason presently established for believing that the extended disruption of custody would, *ipso facto,* be sufficient ground to support an order terminating parental rights (cf. *Matter of Bennett v Jeffreys,* 40 NY2d 543; *Matter of Sanjivini K.,* 40 NY2d 1025; *Matter of Bennett v Marrow,* 59 AD2d 492). The present record suggests that the disruption in custody in this case might well have been caused by the petitioner and, as I have noted in *Matter of "RR"* (66 AD2d 118), such conduct should not be rewarded by the perfunctory finding of permanent neglect or an order terminating parental rights (see *People ex rel. Ninesling v Nassau County Dept. of Social Servs.,* 46 NY2d 382).