In the Matter of DONNA DORENE "G",* a Child Alleged to be Permanently Neglected. ST. LAWRENCE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; DONALD "G",* Appellant.

Third Department, October 4, 1979

* Names fictitious for purpose of publication.

**APPEARANCES OF COUNSEL**

*Richard A. Dudley, Jr.,* for appellant.

*Ethan Phillips (Terrence J. Whelan* of counsel), for respondent.

*Nelson, Nelson & O'Donnell (Terry O'Donnell* of counsel), for foster parents.

**OPINION OF THE COURT**

GREENBLOTT, J.

Donna, age six, was born to appellant and his wife on May 31, 1973. At the time of the parents' separation some six months later, seven children resided with them. Appellant's wife left Donna and five other children with appellant and took with her Corrine, a child born to her out of wedlock. Three of the children left with appellant were his children from a previous marriage, and the other three were the offspring of his marriage to Donna's mother. In December of 1974, the parents were divorced.

In the spring of 1974, appellant and his wife executed a custody agreement. He received custody of the three children from his previous marriage and she obtained custody of the three children from their present marriage and custody of Corrine. Shortly thereafter, however, he surrendered custody of the three children living with him to the St. Lawrence County Department of Social Services (agency), and on March 4, 1974, appellant's wife surrendered custody of the four children residing with her to the agency. On the same day, Donna, who was then 10 months old, was placed in a foster home. Appellant subsequently moved to Buffalo, New York, approximately 300 miles from the foster home.

On July 2, 1974, the agency filed a petition alleging that all seven children, including Donna, were neglected within the meaning of article 10 of the Family Court Act. The Family Court found the children to be so neglected, and in an order entered July 15, 1975, it directed that the children be placed with the agency for one year.

On September 24, 1976, the Family Court directed the agency to institute a proceeding to legally free Donna for adoption, and on May 27, 1977, the agency filed a petition seeking an order adjudicating Donna a permanently neglected child and permanently terminating the parental rights of her parents. The Family Court, in its fact-finding decision filed February 28, 1978 (93 Misc 2d 399), held that the agency met its burden of proof at the fact-finding hearing; and in its dispositional decision filed July 12, 1978, the court concluded that the parental rights to Donna should be terminated permanently and that the child's best interests would be served by permitting the present foster parents to adopt her. Only the father appeals.

Section 384-b (subd 4, par [d]) of the Social Services Law provides that an order terminating parental rights may be granted where the child is "permanently neglected". A permanently neglected child is defined as one whose parents have "failed for a period of more than one year following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child." (Social Services Law, § 384-b, subd 7, par [a].)

The first issue presented by this appeal is whether the agency made diligent efforts required by the statute to encourage and strengthen the parental relationship and, if not, whether it was excused from such efforts as being contrary to the child's best interests (Family Ct Act, § 614, subd 1, par [c]). The Family Court concluded that such efforts would have been detrimental to the child's best interests, thereby relieving the agency of its obligation to strengthen the parental relationship. The court reasoned that the child, having lived over four fifths of her lifetime with the foster parents, formed deep psychological ties to them and that it would have been detrimental to her best interests to encourage the parental relationship. We agree.

Doctor Rapp, a psychologist, testified at a hearing held on October 7, 1977 that she had examined Donna and the foster parents in March of 1977 and observed the interrelation between them. Donna, then three and one-half years old, said that her last name was that of her foster parents, that a "friend" (actually her father) came to visit her, and that the foster parents were her parents. Doctor Rapp further testified that Donna had formed a psychological bond with the foster parents, whom she views as the only significant adult figures in her life, and that it would be detrimental to remove Donna from the foster home because it is the home in which she has been residing since 10 months of age. "It is with the [foster parents] that she has formed psychological bonds for the parents", explained Doctor Rapp, and "it would be in Donna's best interest to remain in the environment which has been secure and stable for her and in which she has formed a strong relationship with the two parent figures". Doctor Rapp

concluded that it would be detrimental to the best interests of Donna to encourage and strengthen the parental relationship.

Doctor Versteeg, also a psychologist, testified that he examined appellant on February 20, 1975, and asked appellant to specify the goals for his children. Appellant "could answer only minimally and would immediately return back to his own justification for his behavior * * * [he] was much more concerned with rationalizing or justifying his past behavior * * * his marital history, than he was in dealing with the needs of his children." Dr. Versteeg explained that appellant had "poor parenting ability" in the sense of "continuing responsible, emotionally acceptable parenting ability", and that he is a "fairly self-centered, ego-centered individual who is pretty much incapable to respond from [sic] the human needs of another person."

Doctor Versteeg's mental health evaluation of appellant was placed in a report dated February 20, 1975, and, thus, less than a year after Donna had been placed in the foster home, the agency had a mental health evaluation indicating that any efforts to improve Donna's relationship with her father would not have been in her best interests. Additionally, the record indicates that following the monthly visits by appellant, Donna screamed, experienced nightmares and wet her bed. According to Doctor Versteeg, Donna regarded her foster parents as her real parents and she would be faced with "serious difficulties throughout her life" if that bond were broken. Furthermore, it should be noted that on December 20, 1974 Donna (as well as the other six children) was adjudicated a neglected child under article 10 of the Family Court Act, based upon the Family Court's conclusion that the children were then living in a "grossly disorganized and chaotic family" which has been subjected to "repeated instances of marital strife and conflict", intensified when appellant's children from his former marriage were introduced into the household. We, therefore, conclude that the record amply justifies the Family Court's conclusion that since agency efforts to strengthen and encourage the parental relationship would have been detrimental to the best interests of the child, it need not have pursued such efforts.

The next issue is whether the evidence adduced at the fact-finding hearing established that appellant failed to maintain contact with Donna or plan for her future. We agree with the Family Court that appellant has maintained regular

contact with Donna. However, that does not end the inquiry, since the contact and planning requirements of the statute must be read in the disjunctive *(Matter of Orlando F.,* 40 NY2d 103, 110), and, thus, the issue narrows itself to whether the agency established that appellant failed "substantially and continuously * * * to * * * plan for the future of the child" (Family Ct Act, § 611; Social Services Law, § 384-b, subd 7, par [a]). To substantially plan for the future of a child means to formulate and act to accomplish a feasible and realistic plan and take the necessary steps to provide an adequate, stable home and parental care for the child *(Matter of Orlando F., supra,* p 110; Social Services Law, § 384-b, subd 7, par [c]).

Appellant remarried in January of 1975, but at the time of the hearings, he and his third wife had separated. He works the evening shift as a machine mechanic and must rely on four different baby sitters to care for the two children residing with him. Although he testified that "I plan to give her [Donna] a good home and see that she gets an education and the love and the care", he has neither articulated nor taken steps to implement any specific plans to accomplish that goal. He has separated from his third wife; the babysitting arrangements for the children currently in his home are haphazard; since Donna's placement, he frequently has changed homes; and because of his work, he would be unable to adequately care for Donna. This cannot be said to amount to the "adequate, stable home and parental care" required by section 384-b (subd 7, par [c]) of the Social Services Law, and demonstrates that appellant has failed for more than one year following Donna's placement to develop a realistic or feasible plan for Donna's return, especially in view of the strong psychological ties which Donna has formed to her foster parents. We, therefore, agree with the Family Court that appellant has not formulated or acted to accomplish a realistic and feasible plan for Donna's future.

▆ In its dispositional decision filed July 12, 1978, the Family Court considered only the best interests of the child. This was proper because section 631 of the Family Court Act provides that an "order of disposition" must be made "solely on the basis of the best interests of the child, and there shall be no presumption that such interests will be promoted by any particular disposition". The court concluded that appellant's parental rights to the child should be terminated permanently. Accordingly, it issued an order, entered July 12,

1978, to that effect and in which the custody of Donna was committed to the agency upon the condition that first preference for adoptive planning be given to the present foster parents. The record amply supports that order and therefore it should be affirmed.

■ Finally, the Family Court's position (93 Misc 2d 399, 402) that *Matter of Bennett v Jeffreys* (40 NY2d 543) is applicable to this statutory permanent termination proceeding did not impair its finding that the child was permanently neglected. This position, which derives from *Matter of Sanjivini K.* (40 NY2d 1025) has been accepted by other courts (see *Matter of Thomas TT,* 67 AD2d 788, 790; *Matter of Leon RR,* 66 AD2d 118, 122-123; *Matter of Lamond B.,* 64 AD2d 625; *Matter of Kim Marie J.,* 59 AD2d 716; *Matter of Leticia Rose M.,* 54 AD2d 909; *Matter of Suzanne Y.,* 92 Misc 2d 652, 658-661; see, generally, Recent Development, Corey L v Martin L: Involuntary Termination of Parental Rights Under New York's "Abandonment" Concept, 43 Albany L Rev 189, 198-199), but it has now been rejected by the Court of Appeals *(Matter of Sanjivini K.,* 47 NY2d 374; see, also, *Matter of Female W.,* 47 NY2d 861). Since the agency has, upon the record before us, satisfied its burden of proof as required by statute (Social Services Law, § 384-b, subd 3, par [g]; Family Ct Act, § 614, subd 1; § 622), we need not pass upon appellant's contention that the Family Court improperly applied the principles of *Bennett* to this case (see *Matter of Female W., supra).* We would note, however, that it was unnecessary for the court to rely on *Bennett* as authority for examining the child's best interest because upon the facts of this case, the statute itself authorizes such an inquiry, not to determine whether the parent or nonparent should receive custody, but rather to determine whether the agency was excused from its burden of making diligent efforts before the filing of the petition upon the ground that such efforts would have been detrimental to the "best interests of the child" (Social Services Law, § 384-b, subd 7, par [a]; Family Ct Act, § 614, subd 1, par [c]).

The order should be affirmed, without costs.

MAHONEY, P. J. (concurring). While I agree with the majority's conclusion that appellant did not formulate or act in an affirmative manner to create a realistic and feasible plan for Donna's future despite his faithful adherence to a visitation schedule fixed by the Department of Social Services (Social Services Law, § 384-b, subd 7, par [a]; *Matter of Orlando F,* 40

NY2d 103, 110), and, further, with the determination that the record clearly supports the conclusion that it would be psychologically destructive not to terminate parental rights and permit adoption, I cannot condone the complete failure of the agency to make any effort, let alone the statutory required "diligent efforts", to strengthen the parent-child relationship. I find absolutely unacceptable the argument that it would not be in the child's best interest to make such efforts when it is clear, as here, that it is the agency's failure to make the required efforts that significantly contributed to, if, indeed, such failure did not wholly create, the extended time span that the infant was with the foster parents and inexorably transferred her love from the natural to the foster parents. The lack of such efforts not only frustrates the legislative intent in one of the most sensitive areas of law and human relationships, it breaches the duty legislatively imposed to do everything possible to keep siblings together and in the care and custody of natural parents.

HERLIHY, J. (dissenting). The emphasis in subdivision 7 of section 384-b of the Social Services Law upon the requirement of "diligent efforts" by the agency to strengthen the family relationship is in accordance with the Legislature's finding, as expressed in clause (iii) of paragraph (a) of subdivision 1 of section 384-b, that: "[T]he state's first obligation is to help the family with services to prevent its break-up or to reunite it if the child has already left home". However, paragraph (a) of subdivision 7 of section 384-b of the Social Services Law appears to excuse diligent efforts when they would be detrimental to the best interests of the child and that is consistent with the legislative finding in clause (ii) of paragraph (a) of subdivision 1 of section 384-b which states, in part: "[P]arents are entitled to bring up their own children unless the best interests of the child would be thereby endangered."

Paragraph (c) of subdivision 1 of section 614 of the Family Court Act, relied upon by the majority, expressly provides that a petition must allege that: "[T]he authorized agency has made diligent efforts to encourage and strengthen the parental relationship and specifying the efforts made *or* that such would be detrimental to the moral and temporal welfare of the child and specifying the reasons therefor". (Emphasis added.) The petition herein asserted that the agency had set up visitation but that further efforts would have been detrimental to the infant because:

"a. [Infant] has resided with foster parents * * * a prolonged period of time.

"b. * * * [Relates to infant's mother].

"c. [Appellant] although following a regular visitation schedule has been unable or unwilling to maintain substantial contact * * *

"d. Both respondents have been unable or unwilling to establish stable home environments or make any adequate plans * * *.

"e. The respondents have not established any meaningful relationship with * * * [infant] * * *.

"f. The foster parents have become the psychological parents of said child and are willing to and desire to adopt her.

"g. The best interests of said child will be served by a transfer of custody to petitioner or to her foster parents for adoptive placement."

The Family Court considered expert testimony as to the psychological effect of removal of the infant from her foster parents after such a long placement and concluded that such long separation was an "extraordinary circumstance" which excused the agency from making diligent efforts. However, it is now well settled that such a separation does not serve as an excuse for diligent efforts where the agency has caused the separation to be lengthy rather than temporary. (*Matter of Sanjivini K.,* 47 NY2d 374; *Matter of Mark GG,* 69 AD2d 311.) It is conceded herein that no assistance at all was extended to the appellant in his admitted efforts to provide a stable home (see *Matter of Anita PP,* 65 AD2d 18).

The conclusion of Family Court that the father's employment is detrimental to providing a home life with more possibility of contact with the infant overlooks the entire lack of help from the agency. If the majority and the Family Court are correct, the simple failure of the agency to comply with the directives of section 384-b of the Social Services Law as to providing "diligent efforts" can be converted into an excuse from attempting at any later time to make diligent efforts (cf. *Matter of Leon RR,* 66 AD2d 118).

It should be noted that the chaotic family condition which initiated the surrender of the infant to the agency and upon which the Family Court's initial finding of neglect was based in 1974, was in relationship to an infant then only a few months of age. No effort has ever been made to assist this

infant and its natural parent in reuniting themselves in a family unit and nothing presented upon this appeal would excuse "diligent efforts" by the agency *(Matter of Anita PP, supra).*

An affirmance here, in my opinion, results in natural parents being deprived of their children due to an interpretation of the statute against the natural parents where the intent and purpose of the same is to help and aid them. The contention, which appears to be prevalent, that a meaningful relationship has been established between the child and the foster parents, is no basis for finding compliance with the statute. Why Donna, among all of the children, was chosen for adoption must be associated with the desires of the foster parents.

While on the present record it would seem, as in many appeals, that the interest of the child might be better served by foster parents, it is my opinion that before the natural parent be *permanently* terminated as to his right to his natural child, there should be strict compliance with the statute which as the concurrence observes is "one of the most sensitive areas of law and human relationships". (See *Matter of Peter John "DD",* 48 AD2d 956 [concurring opn].)

The order should be reversed and the matter remitted to the Family Court of St. Lawrence County with instructions that a plan be developed with the co-operation of the appellant and a reasonable opportunity be given appellant to comply therewith.

STALEY, JR., and MAIN, JJ., concur with GREENBLOTT, J.; MAHONEY, P. J., concurs in a separate opinion; HERLIHY, J., dissents and votes to reverse in an opinion.

Order affirmed, without costs.