■ In the Matter of NORMA JEAN K. COMMISSIONER OF ORANGE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; WANDA MISENHELDER U., Appellant. STATE OF NEW YORK, Appellant, v JOHN B. WINGATE, as Commissioner of Orange County Department of Social Services et al., Respondents. — In a proceeding pursuant to section 384-b of the Social Services Law, *inter alia,* to declare Norma Jean K. a permanently neglected child, which was consolidated with a habeas corpus proceeding brought by the natural mother of Norma Jean for the return of the child, the mother appeals from an order of the Family Court, Orange County, dated September 21, 1979, which after a hearing, *inter alia,* determined that Norma Jean was a

permanently neglected child, awarded custody of the child to the Commissioner of the Department of Social Services and empowered the commissioner to consent to the child's adoption, and denied the mother's writ of habeas corpus. Order modified, on the law, by deleting the provisions thereof which awarded custody of the child to the Commissioner of the Orange County Department of Social Services and "empowered [the commissioner] to place Norma Jean K. for adoption and to consent to her legal adoption, subject to the customary approval of the Court to which any petition for adoption is presented." As so modified, order affirmed, without costs or disbursements, and matter remitted to the Family Court, Orange County, for a new dispositional hearing. Pending the new determination custody shall remain with the Commissioner of the Orange County Department of Social Services. Appellant is the mother of Norma Jean K. who was born on May 1, 1971. The child has been placed with the Orange County Department of Social Services (agency) on three occasions, with the last placement occurring on September 12, 1972. Since that time she has remained in the same foster care home. The record amply supports the Family Court's finding that for certain periods of more than one year each, following the date of the child's placement, her mother "substantially and continuously or repeatedly" failed to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship (see Social Services Law, § 384-b, subd 7). However, the construction of the permanent neglect statute concerning an affirmative finding as to more than a year of agency efforts and parental failures, at any period of time during the child's placement, should not "lead to injustice in the event that a parent's sense of responsibility towards the child has developed in the interim before the proceeding" (*Matter of Jones*, 59 Misc 2d 69, 71). The court is obliged to consider this development in its final disposition of the petition. In the instant case, many months prior to the agency's filing of the permanent neglect petition, appellant, by her conduct and words, indicated her great efforts to stabilize her life so as to plan for the eventual return of Norma Jean. In July of 1978, she had married and thereafter set up a home in Orange County. At the time of the hearing, appellant's husband was employed and her family was not receiving public assistance. Appellant had initiated visitation with Norma Jean in October or November of 1978, and maintained such visitation on an almost weekly basis until shortly before the commencement of the permanent neglect proceeding. She had spoken with Norma Jean's therapist and indicated that she would be willing to return to the therapist with Norma Jean. Further, appellant did not commence her habeas corpus proceeding until the agency indicated that she would not be allowed further visitation with Norma Jean. While there is some indication in the agency records that it contemplated a permanent neglect proceeding in the spring of 1978, it is clear that the agency did not discourage visits by the mother from November of 1978 through June of 1979, until the child apparently indicated that she would not visit with her mother. Indeed, it would appear that the agency was actively encouraging the mother and daughter relationship to the extent possible under the circumstances. At the combined fact-finding and dispositional hearing held on August 22 and 23, 1979, a written evaluation of Norma Jean by a staff social worker at the Department of Mental Health dated July 9, 1979, was submitted which indicated that Norma Jean was working through her problems as to her feelings for her mother and the foster family. There was no indication that visitation should cease and that Norma Jean should be freed

for adoption. While there was testimony that Norma Jean apparently wanted to stay with her foster family, there was also testimony that she had enjoyed her visits with her mother until just shortly before the agency terminated visitation. "[A] child may become unhappy and difficult to handle after contact with [a] parent, but the response must be *not* to eliminate visits, only exert more diligent efforts in working with parent and child" (see *Matter of Denlow,* 87 Misc 2d 410, 421). Under these circumstances, an order terminating appellant's parental rights should be based "on a dispositional hearing that includes professional testimony as to the child's best interests" (see *Matter of Thomas TT.,* 67 AD2d 788, 790). Further, there should be a more complete investigation into appellant's present family situation. Accordingly, the matter is remanded for a new dispositional hearing. Mangano, J.P., Rabin, Margett and Weinstein, JJ., concur.