OPINION OF THE COURT
Wachtler, J.
In this case a mother who temporarily placed her infant daughter with the Rockland County Department of Social Services for foster care seeks to regain custody of the child. The department has repeatedly denied her requests and for several years has sought to offer the child for adoption by attempting to prove, in successive proceedings and on a variety of grounds, that the mother is unfit. Despite financial and legal obstacles the mother has maintained ties with her daughter and in the various proceedings it has been held, by the Family Court or on appeal, that she has not abandoned or neglected the child and is not otherwise unfit. Now the department claims, and the Appellate Division has held, that it would be in the child’s "best interests” that she be freed for adoption by the foster parents with whom she has resided throughout the prolonged litigation.
On this appeal the mother argues that statutory and constitutional limitations prohibit the State from purporting to act in the child’s "best interests” by offering her for adoption by foster parents when the child has not been permanently *378 surrendered, abandoned or neglected by her mother who has sought, for many years, to resume custody and support.
The appellant, Usha K, was born in India. She is an only child whose father died when she was 12. She and her mother then moved to Bombay. When she was 14 years old she began working full time and attended secretarial school at night so that she might eventually earn enough money to come to this country for a college education. She arrived in the United States in 1962 and began to study agriculture and nutrition. Two years later she obtained an associate degree from the State University system. That same year her mother died in India.
While in New York the appellant met an Indian student who apparently agreed to marry her; but when she later became pregnant, in 1965, he deserted her. She dropped out of school and in May of 1966 her daughter, Sanjivini, was born in Rockland County. Unwed and temporarily unable to support the child she agreed to place her in the custody of the Department of Social Services. She refused, however, to surrender the child for adoption and would only consent to temporary foster care.
After the birth of the child the appellant did not return to school. Instead she obtained a job in order to reimburse the department for medical expenses and also to contribute to the support of her daughter. In May of 1967 the immigration authorities commenced deportation proceedings claiming that her student visa had expired. These proceedings were suspended when the Department of Social Services, concerned that the child might be removed to India, filed a neglect petition in the Family Court and obtained a temporary order of placement. Later, after a hearing, the Family Court issued a dispositional order which, although continuing the placement for 12 months, expressly states that "the Court has no finding concerning any acts of the mother that might have constituted a neglect.”
In the latter part of 1967 the appellant returned to school after reimbursing the department $800 for her medical expenses. With the aid of a scholarship and part-time employment she attended a university in Maryland and then in North Carolina, which apparently were the only schools within her means which offered the necessary courses. She still continued to visit her child when able, generally once every two or three months. When her education was com *379 pleted she returned to New York. In the interim her daughter had resided in two foster homes. In 1968 she had been transferred to the foster parents with whom she still resides.
In November, 1970 the appellant asked the Department of Social Services to return the child and also requested that they assist her in obtaining employment in Rockland County. At that time the child was four years old and had resided with the foster parents for only two years. But the agency refused to return her and did little or nothing to help the mother make possible the child’s return. Apparently the agency worker assigned to the case merely furnished appellant with the names and addresses of two potential employers, selected from the telephone book, and did nothing more even though the appellant informed her that she had already been denied employment at those locations.
Thereafter the appellant was unable to find a job in Rock-land County largely, the Appellate Division has noted, because of her immigrant status (53 AD2d 863). Finally she obtained clerical employment in New York City. She contributes monthly to the child’s support and once every other week she travels from New York City to Rockland County to visit the girl. Over the years the department has repeatedly refused to return the child and instead has sought in various proceedings to free the child for adoption by the foster parents by attempting to show that the mother is unfit.
In 1973 the department filed a permanent neglect petition. But, after a hearing, the Family Court concluded in 1974, that the mother had not neglected the child. The mother then filed a petition to terminate custody. While that application was pending she asked the department to permit her to take her daughter to her apartment in New York City, during visitations, in order to ease the transition from foster care. The department however, repeatedly refused to allow visitation on these terms and the mother’s visits lapsed. However she resumed visitation in Rockland County when the Family Court denied her application to terminate custody.*
The department then claimed, during a proceeding to periodically review the foster care placement (Social Services Law, § 392), that the mother had abandoned the child in 1974 by *380 refusing to visit her on the terms fixed by the department. At the conclusion of that hearing the Family Court found that it was in the best interests of the child that her permanent status be ascertained as soon as possible. The court directed the department or the foster parents to file a petition to free the child for adoption and further ordered that if such a proceeding is not commenced within 30 days foster care would terminate and the child would be returned to her mother.
The Appellate Division reversed and directed that the child be immediately returned to her mother’s custody. The court noted that the mother is employed and financially able to support the child, that the department had found her apartment "nicely furnished with moderate accommodations but adequate” and that she had made arrangements for schooling and after-school day care for the child. The court also noted that the record indicates that there is a significant possibility that her immigration status "will ultimately be stabilized and validated”. With respect to the charge of abandonment the Appellate Division stated "In our opinion the evidence clearly establishes that the six-month gap in visitation in 1974 was caused by misunderstandings generated by Usha’s strong desire to re-establish a full and normal relationship with the child. The record certainly does not establish that Usha abandoned her child or is an unfit mother” (53 AD2d 863).
On appeal to our court it was noted that the department had already filed the petition directed by the Family Court and in that related proceeding the court had held that the child had been permanently neglected. Noting also that that determination was then on appeal to the Appellate Division we concluded (40 NY2d 1025, 1026) that the record then before us was incomplete and that "the present foster care review proceeding is not the appropriate judicial vehicle in which to determine the permanent status of the child”. Accordingly we reversed, and without expressing any view as to "whether the child should remain with her foster parents or be returned to her mother”, reinstated the Family Court order which directed the filing of the petition.
Now we have the record of that related proceeding before us. It shows that the Family Court conducted a hearing on the department’s petition and found that the mother had "permanently neglected” the child by failing to plan for her future although financially able to do so and despite diligent efforts by the department to encourage her relationship with the *381 child (see Family Ct Act, § 614; Social Services Law, § 384-b, subd 7). The court conceded that the appellant’s educational plan had been successfully completed but found that this plan had been for the mother’s benefit and not for the benefit of the child. In support of this conclusion the court found that while the mother was completing her education "visitations * * * were most infrequent” and thus the child, instead of benefiting from the mother’s plan, was actually a "victim of the mother’s own ambitions, however laudable.” The court failed to note, however, that in the permanent neglect proceeding concluded in 1974 it was found that the mother had not neglected the child during this period. After a further dispositional hearing the court ordered that the child be freed for adoption by the foster parents.
The Appellate Division affirmed on a different ground. It rejected, implicitly, the Family Court’s factual finding that the mother had failed to plan for the child’s future and the holding that she was guilty of permanent neglect as statutorily defined. Instead, relying on Matter of Bennett v Jeffreys (40 NY2d 543), the court held that there were " 'extraordinary circumstances’ requiring affirmance”. Noting the appellant’s inability to obtain employment in Rockland County, her unsettled immigration status and the extended foster care, the court concluded that it would be in the child’s "best interest” that she be offered for adoption by the foster parents. "Viewed from the standpoint of the impact on the child”, the court said, "a de facto permanent neglect must be deemed to have been established.”
On this record there is no legal basis for offering the child for adoption against her mother’s wishes. The prolonged separation of mother and daughter is, of course, regrettable. But that was due to litigation initiated or necessitated by the department’s actions and was not the result of any parental neglect. Indeed despite the financial and subsequent legal inability of the mother to provide full custody and care, she has, through uncommon effort, preserved parental ties throughout the child’s life. Thus in this and the earlier proceedings the department has repeatedly failed, either in the Family Court or on appeal, to prove the mother guilty of statutory abandonment or permanent neglect or to show that she is unfit. Absent such a finding the courts may not permanently sever all parental ties (Social Services Law, § 384-b, subd 4).
*382 If we were only concerned with deciding custody the prolonged separation might be entitled to greater weight. In Matter of Bennett v Jeffreys (supra) we held that a mother who permitted her child to remain with a family friend for an extended period might be denied the right to regain custody, without regard to fault, if disruption of the existing custody would not be in the child’s best interest. That case involved an informal arrangement and, we noted (at p 545) "as an unsupervised private placement, no statute is directly applicable, and the analysis must proceed from common-law principles”. But even if that rule were applicable to an agency placement governed by statute, it is doubtful whether it could be found to be in the child’s best interests to deny her mother’s persistent demands for custody simply because it took so long for her to obtain it legally. In any event a court may not terminate all parental rights by offering a child for adoption when there has been no parental consent, abandonment, neglect or proven unfitness, even though some might find adoption to be in the child’s best interests (Matter of Corey L v Martin L, 45 NY2d 383).
These are not merely technical rules involving statutory authority, nor are they based on the assumption that a parent’s rights and interests are superior to the child’s. A child, of course, is not a parent’s property, but neither is the child the property of the State (Pierce v Society of Sisters, 268 US 510, 535; Stanley v Illinois, 405 US 645). In many cases the State may, and under some legal systems undoubtedly does, find "better” parents for a child even though the natural parents may be willing and able to provide proper care. But it is fundamental to our legal and social system, that it is in the best interest of a child to be raised by his parents, unless the parents are unfit (see, e.g., Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196, 204; Matter of Corey L v Martin L, supra; Stanley v Illinois, supra).
Finally, we note again that it has already been determined on the last appeal that it is in the child’s best interests that her permanent status be resolved, by either permitting her mother to regain custody, or permitting the foster parents to adopt. Thus, in view of our conclusion that the petition to free the child for adoption should be dismissed, the child should be returned to her mother’s custody.
Accordingly, the order of the Appellate Division should be reversed and the petition dismissed, with costs.

 The mother’s appeal from this order was dismissed by the Appellate Division when the attorneys assigned to represent her failed to perfect the appeal (53 AD2d 863).