*1009 OPINION OF THE COURT
Irene J. Duffy, J.
A hearing was held pursuant to section 1055 of article 10 of the Family Court Act in the instant matter to determine if placement of the child, Evelyn Q., with the Commissioner of Social Services (Commissioner) should be extended an additional year. Several interesting novel questions arose in this hearing concerning the nature of the hearing, whether or not evidence not legally competent may be considered, and, when and to what extent the court may consider the child’s best interest.
A review of the record before the court, including the official court papers, reveals that Family Court intervention by the Commissioner was first sought in July, 1972. At that time a child abuse petition on behalf of the four Q. children, a boy and three girls, was filed. Prior to the filing, however, the child Evelyn, then two years old, had alone been removed from her home by the Commissioner. Hearings were held in the matter and in October of 1973 a finding of abuse as to all four children was made. The finding was, however, specifically based on the evidences of abuse found on Evelyn’s body for which the respondent failed to give a satisfactory explanation. A year and a half later in March of 1975 a dispositional order was entered placing all four children with the Commissioner for an initial period of 18 months. Placement of the children was extended continually until this year. In January of 1979 another Judge of this court extended placement on Evelyn’s three siblings only until June 27, 1979 during which time a trial discharge of the three to the mother was ordered to be effected. In January of 1979 the court also ordered a full mental health study of the child Evelyn and her mother and scheduled a hearing on the request to extend Evelyn’s placement. Because the mother now resides in Puerto Rico the study of the mother was arranged by the Department of Social Services in Puerto Rico (Department). The hearing regarding Evelyn was held in July of 1979. The mother was represented by an attorney but she neither appeared nor presented a direct case at this hearing.
Although from the time of the original disposition in 1975 to 1979 the four children were all in placement with the Commissioner in McMahon Services for Children (Agency), two of the girls had been discharged by the Agency on a trial basis to the mother in 1975, but returned by her to them in *1010 1977. The boy had remained in foster care from 1975 to 1979. Evelyn, however, from prior to the date of the filing of the original petition in 1972 to present had not been paroled to the mother during the prolonged litigation as had been her siblings — and was never discharged by the Agency to her mother on a trial basis.
It is this court’s opinion that this hearing is not a fact-finding hearing requiring only competent evidence but is in the nature of a further dispositional hearing. (See 12A Zett-Edmonds-Buttrey-Kaufman, NY Civ Prac, § 33.05.) The question before the court at this hearing is, therefore, whether or not the petitioner Commissioner has shown by a preponderance of material and relevant evidence that Evelyn needs further court intervention to protect her "from injury or mistreatment and to help safeguard [her] * * * emotional well-being”. (See Family Ct Act, §§ 1011, 1045.)
Numerous exhibits, all material and relevant, including the mental health studies of Evelyn and her mother, a letter from the Agency, and a letter from the Department of Social Services in Puerto Rico were accepted into evidence. In addition, the petitioner presented the testimony of the court psychologist and the Agency caseworker.
The court psychologist testified that Evelyn spontaneously stated to him that she does not ever wish to see her mother again because the mother treated her "bad”. He explained that Evelyn regards the foster family as her true family. It is his expert opinion that a forced return to the mother might lead to "more marked adjustment problems of a pervasive nature.” He foresaw the likelihood of long-term negative effects on the child if the child were now returned against her will. He testified that if the child were not amenable to the return to her mother she might never be able to make the adjustment. He further estimated that optimistically it would take at least one more year to prepare her for such a return. The fact that the child does not wish to return to her mother at this time was also apparent to the court in. her interview with the child. She also expressed to the court no real desire to be reunited with her siblings.
The Agency caseworker testified that the child has resisted contact with her mother and has experienced periods of upset and distress before and after the visits with her mother. He further stated that the child has been receiving therapy from a psychotherapist on a regular basis once a week since 1977 to *1011 help her cope with certain behavioral problems, as well as her anxiety about returning to her mother.
The Agency caseworker testified that he had attempted, with little success, to counsel Evelyn with an eye toward improving the mother-child relationship. He explained that sometimes the child refused to talk about the situation. At other times, she only allowed it for a time and would then abruptly end the conversation. In the caseworker’s opinion the mother is incapable of handling Evelyn at this time — even assuming that the child Evelyn was not resistant. In addition, the caseworker indicated that there was a lack of awareness by the mother of the child’s problems in relating to her.
The exhibits in evidence indicate that the discharge plan in 1979 was built upon the mother and three other children residing with the mother’s two sisters in Puerto Rico. According to the Caseworker, the mother had indicated that she could not care for her children, especially Evelyn, without help from her sisters. The caseworker testified that, in spite of this advice, he received a letter from the mother, dated March 4, 1979, a month after the trial discharge, in which she told him she would be moving out of her sisters’ home. A letter from the Department of Social Services in Puerto Rico, dated April 26, 1979, and accepted into evidence confirmed the fact that the mother had moved from her sisters’ home. The letter states that the mother, a female friend and the three children live together in a two-room rented house. The Department, after visiting the mother’s house, recommended that Evelyn remain in the United States since they doubted the mother’s adequacy and also because of the mother’s serious housing and financial problems.
The clinical psychologist in Puerto Rico who evaluated the mother on April 30, 1979 questioned even her ability to care for the three children then in her care pursuant to discharge and also considered her incapable of handling the fourth child, Evelyn.
Throughout the hearing there were strong legal arguments revolving around the questions of when and to what extent a court may consider the mother’s fitness and the child’s best interest in its determination to extend placement.
To answer this question it is necessary to inquire into the purpose of the relevant legislation. As set forth by the Legislature, the intent is "to establish procedures to help protect children from injury or mistreatment and to help safeguard *1012 their physical, mental, and emotional well-being. It is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met.” (Family Ct Act, § 1011.)
In defining those instances where a child is in need of judicial protection under article 10, the Legislature has set forth in section 1012 of the Family Court Act the definitions of abuse and neglect. It is basically a child’s security against such abuse and neglect that requires court intervention. When a child is shown to be in such need of judicial intervention, such intervention may occur on three different levels: (1) official supervision of the home (Family Ct Act, § 1054, subd a); (2) temporary removal from parental care and placement in the care of Commissioner (Family Ct Act, § 1055, subd a); (3) and in the extreme, the severing of parental ties (Family Ct Act, § 1055, subd d).
The instant case deals only with the second level, i.e., temporary removal and placement or, more specifically, an extension of such temporary removal and placement.
The legislative standards set forth in section 1012 of the Family Court Act are very broad. When the Legislature, as here, has purposely given such broad definitions of abuse and neglect, it is the court’s function to try to identify abuse and neglect by reasonable standards.
To this end the court often relies not on standards set forth by lay persons, but instead by persons trained and competent in the field of child welfare. The reason, of course, is simple. Often abuse and neglect of a child are just not within the capability of a lay person to identify and deal with.
Where the abuse or neglect involves emotional abuse or mismanagement of a child, the only expression may be in the child’s physiological failure to grow or his psychological maladjustment. Such expressions are often totally undiscernible to the benign neighbor or relative. This does not mean, however, that they are not capable of objective demonstration by objective standards. One trained in the field of child welfare is, or should be, able to identify the problem objectively and make appropriate and reasonable conclusions and recommendations.
Thus, when as here the court is called upon to determine whether or not there are factors present causing a reasonable belief that the child’s "emotional well-being” is in need of *1013 further judicial protection because the child could be emotionally abused or neglected if returned to her mother at this time, the court looks, by necessity, to those experts.
This does not mean that the court must blindly follow recommendations of such experts. This court recognizes that good intentions and sincere concerns of welfare and agency personnel and their ability to provide a child with improved material conditions in life are not alone a sufficient basis for continued court intervention. Nor does this court blindly follow the wishes of the child, for they too may be based on a false premise. This court must instead satisfy itself that it has been demonstrated by a preponderance of the material and relevant evidence that the child is in need of its protection according to objective standards.
Respondent, citing Matter of Sanjivini K. (47 NY2d 374) appears to argue that until the mother is shown to be unfit this court may not consider the issue of the child’s best interest at this hearing. The court must reject this argument. Indeed, the Sanjivini case does not support the position of the respondent and is totally distinguishable both on the facts and the law.
The Sanjivini case dealt with the far more serious judicial intervention of a termination proceeding, the standards of which are explicitly set forth in the statute. (See Social Services Law, § 384-b, subd 4.)
In any event, the Sanjivini case cannot be read to support respondent’s position that the best interest of the child cannot be considered prior to a finding of the mother’s unfitness in a dispositional hearing such as this to determine extension of placement of the child.
The facts in the Sanjivini case are also entirely different from this case. The child in the Sanjivini case had originally been voluntarily placed in foster care by its mother. That child was not remanded and later placed with the Commissioner by means of involuntary court intervention after a finding of abuse had been made as to the child such as happened here. The Sanjivini case involved no facts showing a reasonable belief that there could be an emotional abuse or neglect of the child if returned, as here. Moreover, the mother in this case has not, as in Sanjivini (supra, p 381) demonstrated an "uncommon effort” to preserve parental ties throughout the child’s life. Indeed, the mother in this case is evidently not even aware of the difficulties her child Evelyn is *1014 having in relating to her. Contrary to the facts in the Sanjivini (supra, p 379) case were the agency "did little or nothing to help the mother make possible the child’s return”, the Agency here has through efforts of the caseworker and the child’s psychotherapist shown a good faith attempt to counsel the child with a view to her return.
The respondent’s argument also loses sight of the fundamental purpose of the extension hearing. Without a clarification of what is meant by the child’s "best interest” the respondent’s argument only clouds the issue.
Surely, if the child’s best interest were equated to the need to protect the child’s welfare, the respondent’s argument would fly in the face of the legislative purpose. (See Family Ct Act, § 1011.)
This court believes that in order to determine whether this particular child is in need of its protection, the court must look to all relevant and material factors involved, (see Family Ct Act, § 1046.) Only by looking at the total mosaic relating to both the child and its parent can this court be reasonably expected to determine whether this particular child’s welfare is in need of its protection.
This was certainly the legislative intent, when, in defining the dispositional hearing, the Legislature allowed all relevant and material evidence to be admitted whether or not competent. (Family Ct Act, § 1046, subd [c]; 12A Zett-Edmonds-Buttrey-Kaufman, NY Civ Prac, § 33.05.)
From the facts presented this court has a reasonable belief that if Evelyn is now returned to her mother, she will become an emotionally abused and neglected child. Having made such a determination, surely, no one can suggest that this court should discharge the child Evelyn to her mother and sit idly by while the child’s mind is further unhinged. The nature of these proceedings is to protect the child from such harm and not merely to rescue her after more harm is done her.
Accordingly, placement of the child Evelyn with the Commissioner is hereby extended one year as of September 13, 1978.*

 This is not a nunc pro tunc decision. The petition to extend placement was timely filed August 16, 1978. Temporary extensions were granted at each stage of the proceedings.