OPINION OF THE COURT
Judith A. Hillery, J.
These proceedings, involving a rather unusual set of circumstances, raise an issue of first impression regarding the constitutionality of a portion of the Social Services Law of the State of New York.
By separate petitions, dated and verified November 21, 1979, the Dutchess County Department of Social Services seeks to obtain custody and guardianship of two infants under the age of 18 years. The proceedings, brought pursuant to sections 384-b and 384-b (subd 4, par [b]) of the Social Services Law, seek to terminate the parental ties between the children and their presumptive natural father on the ground that the father has forfeited his parental rights by his abandonment of the children.
The children were placed by the natural mother with the Department of Social Services on July 2, 1970 and July 7, 1971, respectively, and except for a brief period when one of the children was returned to the natural mother, both children have remained in foster care to the present time. The mother executed a written surrender of custody and guardianship for each child on June 4, 1979.
The matter is complicated by the fact that the natural mother has resided with one Albert W. from 1966 to the present time. During this time period and until her divorce on November 6, 1972, the natural mother was married to Joseph A. N., the respondent presumptive father herein. Thereafter, on December 22, 1972, the natural mother married Albert W. On December 17, 1979, the Department of Social Services amended the original petitions to allege that at the time the children were placed, Albert W. was openly living with the *265 natural mother and children and holding himself out to be their father. On January 15, 1980, Albert W. was served with notice of these proceedings pursuant to section 384-c (subd 2, par [e]) of the Social Services Law.
Prior to the hearing on these petitions, the natural mother filed paternity proceedings with respect to the two children alleging that Albert W. is their father. The natural mother simultaneously filed a petition for custody of the children alleging that the surrender instruments which she executed on June 4, 1979 were the "result of emotional stress, medication as well as duress by representatives of DC-DSS”. Additionally, by order to show cause dated April 23, 1980, the natural mother seeks to have this court set aside and revoke the surrender instruments which she executed on June 4, 1979.
On March 25, 1980, a hearing was held with respect to the petitions to terminate the parental rights of the presumptive father wherein the Dutchess County Department of Social Services was represented by counsel, the infants were represented by a Law Guardian appointed by the court, the natural mother was represented by assigned counsel, and the out-of-wedlock father was represented by assigned counsel. The respondent presumptive father, who was served by an order of publication, did not appear personally or by counsel. The evidence and testimony conclusively showed that the respondent presumptive father has abandoned these children by his failure to visit with them, communicate with them by telephone, mail, gifts, or otherwise, and by his failure to support them for a period of time in excess of six months from the date of the filing of the petitions (Matter of Sanjivini K., 47 NY2d 374, 380, 381; Matter of Corey L v Martin L, 45 NY2d 383, 391). Accordingly, this court finds that the presumptive father has displayed a clear and decisive long-standing intent to forego whatever parental rights he may have had and has in fact abandoned the children.
By notice of motion dated March 17, 1980, and made returnable on March 25, 1980, the date of the termination of parental rights hearing with respect to the presumptive father, Albert W. moved to dismiss these proceedings by alleging the unconstitutionality of sections 384-b and 384-c of the Social Services Law as applied to the facts in this case. The constitutional argument is directed to that portion of sections 384-b and 384-c of the Social Services Law which differentiates *266 between the rights granted an out-of-wedlock mother and an out-of-wedlock father in a proceeding to terminate parental rights. Mr. W. argues that if the Dutchess County Department of Social Services sought to terminate the rights of the mother of a child born out of wedlock, pursuant to section 384-b of the Social Services Law, it could do so only upon proof of one of the grounds enumerated in subdivision 4 of that section, namely, abandonment of the children by the mother, inability of the mother to provide adequate care for the child by reason of mental illness or retardation, or permanent neglect of the children by the mother. In contrast, an out-of-wedlock father need only be given notice of the proceeding and then may only present evidence at the dispositional hearing with respect to the best interests of the child. There need be no finding against the out-of-wedlock father as to whether he had abandoned the children, permanently neglected the children, or was otherwise unfit to act as a parent (see Social Services Law, § 384-c, subds 2, 3). Mr. W. bases his position upon the recent United States Supreme Court decision, Caban v Mohammed (441 US 380, 394), which declared section 111 of the Domestic Relations Law unconstitutional in that it permitted the adoption of a child born out of wedlock without the consent of the natural father, while requiring such consent from the mother.
Since the natural mother has executed surrender instruments for adoption of the children pursuant to subdivision 2 of section 384 of the Social Services Law and since the evidence clearly showed that the children were born out of wedlock, the provisions of subdivision 1 of section 384 of the Social Services Law are significant because an out-of-wedlock child may be freed for adoption upon surrender by the natural mother alone (see Social Services Law, § 384, subd 1, par [c]). The wording, nature and effect of section 384 of the Social Services Law and section 111 of the Domestic Relations Law are virtually identical — by the surrender or consent of the natural mother alone, an out-of-wedlock child may be freed for adoption (compare Social Services Law, § 384, subd 1, par [c], with Domestic Relations Law, § 111, subd 1, par [c]).
It should also be kept in mind that subdivision 4 of section 384-b of the Social Services Law, the statute under which the instant proceedings were commenced, provides that: "An order committing the guardianship and custody of a child pursuant to this section shall be granted only upon one or more of *267 the following grounds * * * (b) The parent or parents, whose consent to the adoption of the child would otherwise be required in accordance with section one hundred eleven of the domestic relations law, abandoned such child” (emphasis added).
With the similarities and the interrelationship of the pertinent provisions of the Domestic Relations Law and the Social Services Law in proper focus, a brief review of two decisions bearing on the issues before this court is in order.
In Stanley v Illinois (405 US 645), the United States Supreme Court held that the rights of an unwed father to custody of his child could not be terminated without the hearing requirements of due process of law. Stanley was followed by the New York State Court of Appeals decision in Matter of Malpica-Orsini (36 NY2d 568, opp dsmd 423 US 1042) which held that mere notice and opportunity to be heard satisfied the due process requirements of Stanley. The Malpica-Orsini case, interpreting the effect of Stanley, held that consent of the unwed father to the adoption of his child was still unnecessary (supra, p 574).
Section 111-a of the Domestic Relations Law and section 384-c of the Social Services Law were enacted as the result of the Stanley and Orsini decisions. Subdivisions 1, 2 and 3 of section 111-a of the Domestic Relations Law and subdivisions 1, 2 and 3 of section 384-c of the Social Services Law classify certain out-of-wedlock situations which require notice to the father in a pending adoption proceeding and in a pending surrender or termination of parental rights proceeding. More importantly, each statute specifically limits the evidence which the unwed father may present pursuant to such notice. Subdivision 3 of section 111-a of the Domestic Relations Law and subdivision 3 of section 384-c each, in identical language, provide that: "The sole purpose of notice under this section shall be to enable the person [unwed father] served * * * to present evidence to the court relevant to the best interests of the child.” These sections were clearly intended to short-circuit any attempt by an unwed father to misconstrue the right to notice for the right to veto the adoption. In no uncertain terms the rights of the unwed father were classified as inferior to those of the unwed mother (see, generally, People ex rel. William R. v New York State Family Ct., Bronx County, 99 Misc 2d 427).
This court must now measure those provisions of the Social *268 Services Law, which are at issue, against the mandates of the Supreme Court ruling in Caban. Section 111 (subd 1, par [c]) of the Domestic Relations Law reads in part that "consent, to adoption shall be required [o]f the mother, whether adult or infant, of a child born out of wedlock”. Section 384 (subd 1, par [c]) of the Social Services Law reads that "guardianship of the person and the custody of a * * * child * * * may be committed to an authorized agency by a written instrument which shall be known as a surrender, and signed * * * if such child is born out of wedlock, by the mother of such child”. In analyzing section 111 of the Domestic Relations Law, the Caban court (441 US 380, 394, supra) held that "The effect of New York’s classification is to discriminate against unwed fathers even when their identity is known and they have manifested a significant paternal interest in the child.” Having so found, the court concluded (p 394): "that this undifferentiated distinction between unwed mothers and unwed fathers, applicable in all circumstances where adoption of a child of theirs is at issue, does not bear a substantial relationship to the State’s asserted interests.” (Emphasis added.)
Section 384 of the Social Services Law frees a child for adoption upon the execution of a surrender by the unwed mother alone. This court finds no significant difference between the rights which are terminated by an unwed mother who consents to an adoption pursuant to section 111 (subd 1, par [c]) of the Domestic Relations Law and the rights which are terminated by an unwed mother who assigns to another, for example, a social service agency, her right to consent to an adoption pursuant to section 384 of the Social Services Law. In each case the result is identical — the child is freed for adoption without the consent of the unwed father.
Section 384-b (subd 4, par [b]) of the Social Services Law incorporates section 111 of the Domestic Relations Law to the extent that parental rights may be terminated upon a finding of abandonment by a parent whose consent would otherwise be required in accordance with section 111 of the Domestic Relations Law. The Caban court specifically held that the consent of an unwed father, who had significant contacts with the child, was required under section 111 of the Domestic Relations Law. By simple interpolation, there must be a specific finding of abandonment as to an unwed father in a termination proceeding commenced pursuant to section 384-b *269 (subd 4, par [b]) of the Social Services Law. (See Caban v Mohammed, 441 US 380, 394, supra.)
In examining the procedures established by subdivision 3 of section 384-c of the Social Services Law for the participation by an out-of-wedlock father in a termination proceeding, those procedures are entirely incompatible with the basic thrust of the Caban ruling. This conclusion follows from the fact that subdivision 3 of section 384-c of the Social Services Law deprives the unwed father of the right to present evidence at the fact-finding hearing except with respect to the issue of the best interests of the child. Furthermore, in a termination of parental rights proceeding brought on the ground of permanent neglect, the unwed father is precluded from even participating in the fact-finding hearing and may only present evidence at the dispositional hearing (see Social Services Law, § 384-c, subd 3). In the context of the Caban holding, notice without opportunity to be heard on all relevant issues denies due process and renders such notice illusory.
The Department of Social Services urges this court to rely upon that portion of the Caban decision which states (p 392): "In those cases where the father never has come forward to participate in the rearing of his child, nothing in the Equal Protection Clause precludes the State from withholding from him the privilege of vetoing the adoption of that child.”
Significantly, the Caban court went on to make reference to that portion of the Domestic Relations Law which provides for relief from the required consent upon a finding of abandonment (441 US 380, 392, supra; see Domestic Relations Law, § 111, subd 2, par [a]). Such relief could only be had upon presentation of facts supporting a conclusion of abandonment, or equivalent fault, not merely upon presentation of facts establishing one’s status as an unwed father. However, the method established in those provisions of the Social Services Law under which the Department of Social Services is operating in this case, does not provide Mr. W. with the same rights as the children’s mother. The evidence presented at the hearing clearly showed that Mr. W.’s contacts with the mother of the children before, during and after their birth were significant and that he has had substantial contacts with the children since their birth. Additionally, the Department of Social Services has filed numerous petitions with this court for extension of foster care placement for these children alleging that Mr. W. is one of the persons legally responsible for the *270 children. Moreover, a representative of the Department of Social Services testified that the department in the past made plans to reunite the children with their natural mother and Mr. W. Furthermore, Mr. W. testified that he voluntarily made support payments to the Department of Social Services for the children until he was told by the department to cease making the payments. Finally, he testified that he asked the Department of Social Services to have him legally named as the father of the children and was advised by a representative of the agency that such a proceeding was not necessary. On the facts presented, to deny the obvious conclusion that these children are the natural children of Mr. W., would be to deny a fact which all parties willingly concede.
As a final argument, the Department of Social Services contends that the best interests of the children take precedence over whatever rights the parents may have with respect to the children. This philosophy was soundly rejected by the New York State Court of Appeals in Matter of Bennett v Jeffreys (40 NY2d 543), wherein the court held that where one seeks to terminate parental rights, the contest may not resolve itself into a battle as to whether the parent or nonparent will best advance the interests of the child. It is only after a specific prior finding of forfeiture of right or the equivalent, that the child’s best interests may be considered. Additionally, the Court of Appeals held in Matter of Sanjivini K. (47 NY2d 374, 381, supra) that there is no legal basis for offering a child for adoption against an unwed mother’s wishes absent a finding of statutory abandonment or permanent neglect or a finding that she is an unfit parent. The Department of Social Services would have this court hold that, with respect to an unwed mother, absent her consent, there must be a finding of statutory abandonment or permanent neglect or that the mother is an unfit parent, but with respect to an unwed father, absent his consent, there need only be a finding that it is in the child’s best interests for the child to be freed for adoption. The "best interests” argument is, unfortunately, not a substitute for what this court considers a serious violation of the due process and equal protection clauses of the United States Constitution.
It is recognized that a court of inferior jurisdiction should not lightly declare invalid legislation which is wrapped in the shroud of presumptive constitutionality. However, this court is of the opinion that the origin, nature, purpose, and effect of *271 the legislation at issue in this matter are virtually a mirror image of the legislation which was declared invalid by the United States Supreme Court in Caban. The shroud of presumed constitutionality surrounding sections 384, 384-b and 384-c of the Social Services Law, as applied to the facts of the case, having been made of the same fabric as that which had protected section 111 of the Domestic Relations Law, is subject to the same weaknesses.
Relying on the rationale of the holding in Caban, this court finds that to the extent that section 384 of the Social Services Law permits the adoption of an out-of-wedlock child upon the surrender by the mother alone, such section violates the equal protection clause of the United States Constitution. To the extent that sections 384-b and 384-c of the Social Services Law permit the permanent termination of parental rights in a proceeding which significantly differentiates between the rights accorded an unwed mother and an unwed father and severely limit the ability of the unwed father to present evidence at such a proceeding, those sections violate the equal protection and due process clauses of the United States Constitution.
This court determines that Albert W. may not have such rights as he may possess as the natural father of these children terminated, except within the context of a proper proceeding to terminate those rights, in which proceeding his status shall be equal to the rights of a natural mother similarily situated.