■    In the Matter of HANS S., a Child Alleged to Be Permanently Neglected. ROCKLAND COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JACK S. et al., Appellant.—In a proceeding pursuant to article 6 of the Family Court Act for a determination that Hans S. is a permanently neglected child, the natural parents, Jack and Ursula S., appeal from an order of the Family Court, Rockland County, dated July 6, 1979, that adjudged the child to be permanently neglected, ordered that the guardianship and custody rights of the parents be transferred to the Rockland County Department of Social Services and authorized that department to consent to the adoption of the child without the consent of or further notice to the natural parents of the child. Order reversed, on the law and the facts, without costs or disbursements, and petition dismissed. Sometime in late 1975, a neighbor of Jack and Ursula S. reported that their two-year-old son, Hans, was being neglected. The Department of Social Services of Rockland County (the agency) intervened and ultimately petitioned to have the child removed from his home. The reports on the child by a case worker and a doctor indicate that the boy was healthy and well nourished but that the family situation was in chaos. The neglect petition was granted in March, 1976 and Hans, who was by then three years old (he was born in Feb., 1973) was placed in foster care. The appeal from that order was not perfected. Two extensions of the foster care placement were obtained by the agency. On February 23, 1978 a social worker, acting on behalf of the agency, petitioned to have Hans declared "permanently neglected". The petitioner alleged, *inter alia,* that notwithstanding his diligent efforts to encourage and strengthen the parental relationship, the parents had failed to make any plan for Hans to return to their custody and they had refused to accept mental health services (see Social Services Law, § 384-b; Family Ct Act, § 614). A fact-finding hearing was held. The Family Court adjudged the child to be permanently neglected, *inter alia,* on the basis of the parents' failure "to obtain the intensive psychiatric treatment necessary to treat their serious mental illnesses." A dispositional hearing followed (see Family Ct Act, § 631) and the child was freed for adoption. We reverse. To prove the allegations of the petition, the agency was required to establish, by a fair preponderance of the competent, material evidence (Family Ct Act, §§ 622, 624), that there was a failure of the parents to maintain contact with or plan for the future of the child, although physically and financially able to do so, and that the agency made diligent efforts to encourage and strengthen the parental relationship, unless such efforts would be detrimental to the best interests of the child (Social Services Law, § 384-b, subd 7, par [a]). "[A] heavy burden of constitutional magnitude [rests] on one who would

terminate the rights of a natural parent through adoption" *(Matter of Corey L v Martin L,* 45 NY2d 383, 386-387). "[A] court may not terminate all parental rights by offering a child for adoption when there has been no parental consent, abandonment, neglect or proven unfitness, even though some might find adoption to be in the child's best interests" *Matter of Sanjivini K.,* 47 NY2d 374, 382). The evidence at the fact-finding hearing was insufficient to establish that the appellants had failed, for more than a year, to plan for the future of the child by failing to utilize psychiatric and other rehabilitative services. In 1976, 1977 and 1978, one or both of the parents received psychiatric counseling. In July, 1976, after the child was first adjudged neglected, the father conferred with a psychiatrist and, in addition, committed himself to a hospital for a one-month period for psychiatric treatment. From January to May, 1978, the father was in psychotherapy while he was a patient in a hospital, to which he had been involuntarily admitted. The mother was counseled from some time in August, 1977 (with her husband) through January, 1978. Although the therapy may not have been of the precise character the agency had in mind, it was evidently successful, for both parents are gainfully employed; they have ceased moving about and have been living for more than a year in a residence that the agency finds suitable. During all the time the child had been in foster care they have been diligent in maintaining their twice monthly visits with the child. On this state of the record, the proof of "lack of planning" fails. Despite their history of psychological distress, a finding that the parents have permanently neglected the child is not established. Nevertheless, this determination should not be construed as reflecting any opinion of this court as to where the best interests of the child lie should any further hearing be held. In light of our decision, we do not find it necessary to reach the other issues raised by the appellants. Hopkins, J. P., Damiani, Titone and Lazer, JJ., concur.