**Maria MOE, Raoul Roe, and Ricardo Roe, an infant by his father, Raoul Roe, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,**

v.

**David DINKINS, individually and as City Clerk of New York City, on behalf of himself and all town and city clerks in New York State, and David Axelrod, individually, and as New York State Commissioner of Health, Defendants-Appellees.**

No. 454, Docket 80–7676.

United States Court of Appeals, Second Circuit.

Submitted Nov. 25, 1980.

Decided Dec. 9, 1980.

---

Janet M. Calvo, New York City (Washington Square Legal Services, Inc., of counsel), for plaintiffs-appellants.

Robert Abrams, Atty. Gen. of the State of New York, New York City (Robert J. Schack, Asst. Atty. Gen., George D. Zuckerman, Asst. Sol. Gen., New York City, of counsel), for defendant-appellee Axelrod.

Allen G. Schwartz, Corp. Counsel of the City of New York, New York City (June A. Witterschein, New York City, of counsel), for defendant-appellee Dinkins.

Before KAUFMAN and TIMBERS, Circuit Judges, and PIERCE, District Judge.*

IRVING R. KAUFMAN, Circuit Judge:

Federal adjudication of constitutional challenges to state statutes is an arduous task, for the delicate balance between federal and state power must be crafted with a sensitivity responsive to their respective authorities. The Constitution and Congress equip federal courts with authority to void state laws that transgress federal civil rights, but comity toward state sovereignty counsels the power be sparingly used. Accordingly, the doctrine of abstention authorizes our federal courts to refrain from interpreting state law where ambiguities in that law might enable a plaintiff to prevail in the courts of the state. Abstention, however, creates a lapse in the federal protection of civil rights. Accordingly, we are instructed to utilize the doctrine with strict circumspection. Plaintiffs in this case sue to vindicate what they contend to be at the heart of our constitutional liberties, the right to marry and to raise a family without unreasonable social and legal stigma. Their chances of success under state law alone are attenuated at best. The harm they allege is immediate. Abstention is therefore improper, and we reverse the district court's order dismissing the complaint and remand for further proceedings.

* Of the United States District Court for the Southern District of New York, sitting by designation.

## I.

A brief review of the facts is instructive. Raoul Roe[1] was born on March 9, 1962, and Maria Moe was born on March 2, 1965. In late November 1978, Maria became pregnant by Raoul. He was sixteen; she was thirteen. Maria's mother, who is a widow, urged Maria to have an abortion; Maria refused. In April 1979, Maria and Raoul moved into an apartment together, and decided to marry. Raoul's parents gave their permission, but Maria's mother refused. On August 21, 1979, Maria bore a son, Ricardo Roe.

Maria, Raoul, and Ricardo filed suit on March 19, 1980, in the federal district court under 42 U.S.C. § 1983 (1976). Their complaint alleged that the New York statute controlling the marriage of minors, New York Domestic Relations Law § 15, unconstitutionally burdened Maria's and Raoul's right to marry.[2] New York law forbids marriage without a license,[3] and section 15 provides in part:

> If it shall appear ... that the woman is under the age of eighteen years and is not under fourteen years of age then the town or city clerk before he shall issue a license shall require the written consent to the marriage from both parents of the minor ... or such as shall then be living ....[4]

Beyond the denial of Maria's and Raoul's right to marry, plaintiffs alleged, the New York statute deprived Maria of workmen's compensation benefits, Social Security benefits, and intestate succession rights she might enjoy as Raoul's wife.[5] Further, they claimed that section 15 inflicted all of the social and economic disabilities of illegitimacy on Ricardo. Therefore, time was of the essence in the prosecution of their suit.

Defendants moved to dismiss, contending that the federal court should abstain from adjudication. Judge Motley, in a careful opinion, found section 15 "unclear in a number of respects," and dismissed the action.[6] This appeal followed.

## II.

The legal standard for federal judicial abstention has been considered on numerous occasions, and the law is clear. When asked to void a state law on constitutional grounds, a federal court will stay its hand if the state statute is susceptible of two or more constructions, and if one of the interpretations will either save the statute

---

1. By district court order, the plaintiffs have been permitted to proceed under pseudonyms.

2. Plaintiffs alleged that marriage is a "fundamental right," *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), and that such fundamental rights are not restricted to adults, *see Carey v. Population Services Int'l*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (making family planning services available to minors). Therefore, plaintiffs contend, § 15's prohibition of their marriage is unconstitutional. In light of our decision, we express no view on the merits, nor on plaintiffs' motion for class certification.

3. *See* New York Dom.Rel.Law § 13 (McKinney 1977). Named as defendants were David Dinkins, City Clerk of New York, and David Axelrod, New York State Commissioner of Health. They administer the granting of marriage licenses.

4. Females under fourteen may not marry. New York Dom.Rel.Law § 15-a (McKinney 1977). Females fourteen or fifteen need both parental and judicial consent to marry *Id.* at § 15, subd. 3. Since Maria never secured parental consent, § 15's judicial consent provision is not relevant here.

Section 15 also requires parental consent for males under eighteen who wish to marry. Raoul had secured such permission. In any event, he was eighteen when the complaint was filed. The district court dealt only with the parental consent requirement relating to Maria.

5. If Maria were Raoul's wife, she might be eligible for Workmen's Compensation benefits under New York Work.Comp.Law § 15 (McKinney 1965 & Supp.1979–1980), Social Security benefits under 42 U.S.C. § 402 (1976), and intestate succession rights under New York Est., Powers & Trusts Law § 4–1.1 (McKinney 1967).

6. The dismissal was without prejudice so that plaintiffs could pursue their constitutional claims, if necessary, in federal court after completion of state court proceedings. *See generally England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 425, 84 S.Ct. 461, 470, 11 L.Ed.2d 440 (1964).

or modify the constitutional issue. *See Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Pharmaceutical Society, Inc. v. Lefkowitz*, 586 F.2d 953, 956 (2d Cir. 1978); *Winters v. Lavine*, 574 F.2d 46, 69 (2d Cir. 1978); *McRedmond v. Wilson*, 533 F.2d 757, 760 (2d Cir. 1976).[7] Should the federal court abstain and the state tribunal elect the saving construction, dividends of comity redound. But should the state suit produce an interpretation in which constitutional infirmities persist, the plaintiff is forced, usually years later,[8] to return to the federal court.

Crucial to the abstention decision, therefore, is the ambiguity of the state statute. A clearly-worded law leaves even the most constitutionally-sensitive state court little room to maneuver its way to a saving construction. Remand under such circumstances serves no purpose of comity; it wastes the plaintiff's, the defendant's, and the state court's time, and causes unseemly delay in the federal court adjudication.

The statute before us is clear. No ambiguous words or phrases exist; the parties concur on the import and application of "consent," "parents," and every other material term. They also agree that the statute as written creates a total bar to Maria's marriage so long as her mother demurs. To evade the constitutional analysis that seems to us so clearly mandated, the state poses three alternative constructions of section 15 which might permit Maria and Raoul to marry. The suggestions are quite strained, and none of the three is sufficiently tenable to merit abstention.

First, the state argues New York courts might impute a requirement of "reasonableness" into the parents' decision to give or withhold consent. Such a standard is, of course, not in the statute, and New York courts have never departed from a literal interpretation of section 15. In *In re Powers*, 96 Misc.2d 183, 408 N.Y.S.2d 761 (Fam. Ct.1978), a widowed mother refused to consent to the marriage of her seventeen-year-old son, and the son sued to secure approval. The Family Court held itself without subject matter jurisdiction, "even were [consent] shown to be unreasonably withheld or refused . . . ." In *Berger v. Adornato*, 76 Misc.2d 122, 350 N.Y.S.2d 520 (Sup.Ct.1973), an under-age male whose parents would not consent challenged the constitutionality of an earlier version of the statute's creation

**7.** Abstention was initially characterized as an equitable concept, since it is invoked in actions seeking an injunction against the enforcement of a state statute or a declaration that a statute is void. *See Railroad Commission v. Pullman Co.*, 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). Although abstention's origins in equity might suggest that decisions to abstain are reversible only if an abuse of discretion, appellate courts from *Pullman* to the present have used a more searching standard of review, and have reversed abstention orders whenever convinced the decision was improper or wrong. 1A *Moore's Federal Practice* ¶ 0.203[1] at 2105–06 (2d ed. 1980). ("[E]lements of the *Pullman* abstention doctrine [are applied] in essentially the same way as a statute is applied"). *See, e. g., Naylor v. Case and McGrath, Inc.*, 585 F.2d 557 (2d Cir. 1978); *McRedmond v. Wilson*, 533 F.2d 757 (2d Cir. 1976); *Freda v. Lavine*, 494 F.2d 107 (2d Cir. 1974). More vigorous review is required because the sensitive federalist concerns served by abstention merit careful appellate scrutiny. Moreover, the factors on which the decision to abstain depends—ambiguity of state law, materiality of the state issue, *see McRedmond v. Wilson, supra*—do not fall within any special expertise of a district court. Finally, while

abstention first appeared in cases involving injunctions, abstention *soi-meme* is not equitable. Since *Pullman*, abstention has been sanctioned in cases wholly at law. *E. g., Louisiana Power & Light Co. v. Thibodaux*, 360 U.S. 25, 28, 79 S.Ct. 1070, 1072, 3 L.Ed.2d 120 (1959). We consider our review to approach that of a plenary examination given to questions of law.

**8.** The abstention doctrine is one of the dark chapters in the history of judicial dispatch. *See, e. g., England v. Louisiana State Board of Medical Examiners*, 384 U.S. 885, 86 S.Ct. 1924, 16 L.Ed.2d 998 (1966) (per curiam) (three suits, nine years); *Silverman v. Browning*, 414 F.Supp. 80 (D.Conn.) (three-judge district court), *aff'd*, 429 U.S. 876, 97 S.Ct. 228, 50 L.Ed.2d 162 (1976) (five years). *See also* Clark, *Federal Procedural Reform and States' Rights; to a More Perfect Union*, 40 Tex.L.Rev. 211, 221 (1961) (citing eight- and ten-year delays). *See generally England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 425, 84 S.Ct. 461, 470, 11 L.Ed.2d 440 (1964) (Douglas, J., concurring) ("*Pullman* from the start seemed to have some qualities of a legal research luxury.").

of different age limits for males and females. The court did not embrace the opportunity to impute "reasonableness" into the parental consent requirement and allow the plaintiff to marry on that ground; instead, it declared the age differential totally unconstitutional. Moreover, where one parent is insane, and therefore presumably unable to give reasoned consent, the permission of that parent is still required. 1964 Op.Atty.Gen. 138. And, the consent of a court-appointed guardian cannot bypass the statutory requirement of parental consent, regardless of the unfairness created by a refusal to grant permission. 1973 Op. Atty.Gen. 144–45.

Second, the state argues that New York courts could read into section 15 a "best interests of the child" standard. This technique, however, has been employed less frequently than the state maintains, and then only in child custody cases. *See, e. g., In re Wesley L. III*, 72 A.D.2d 137, 423 N.Y.S.2d 482 (1st Dep't 1980). In those instances, the governing statute, New York Social Services Law § 384–b, subd. 1 (McKinney Supp. 1979–1980), contains an explicit direction that "the best interests . . . of the child" shall be considered. New York courts have curtailed the application of this standard even in the child custody context. *See In re Sanjivini K.*, 47 N.Y.2d 374, 391 N.E.2d 1316, 418 N.Y.S.2d 339 (1979). Moreover, they have never imputed this language into a statute where the language was not included by the legislature that passed it.

■ Finally, the state suggests New York courts might read section 15 to exempt "emancipated minors" from the parental consent requirement. Here too, courts have shown no tendency to stray from the words of the statute toward such an interpretation. In *Berger v. Adornato, supra*, 350 N.Y.S.2d at 523, the court found the plaintiff to "a mature, emancipated man," but did not find that this status afforded an exemption from the clear words of section 15. Moreover, we note that even if an "emancipated minor" exemption could be read into section 15, it would probably not apply to Maria, for she

is not emancipated. New York minors are emancipated by agreement of parent and child, or by unilateral action of the parent. Emancipation is not within the sole power of the child. *Sevrie v. Sevrie*, 90 Misc.2d 321, 394 N.Y.S.2d 389 (Fam.Ct.1977); *Bates v. Bates*, 62 Misc.2d 498, 310 N.Y.S.2d 26 (Fam.Ct.1970). Further, emancipation is generally applied to those over eighteen, *see* New York Gen.Oblig.Law § 3–101 (McKinney 1977) (declaring contracts of persons over eighteen effective); New York Pub. Health Law § 2504 (McKinney 1977) (allowing persons over eighteen to consent to medical treatment), or over sixteen, *see People ex rel. C. v. Spence-Chapin Services*, 48 U.S.L.W. 2709 (Sup.Ct.N.Y.Co. March 27, 1980) (sixteen-year-old may give up her child for adoption, since no statute disables minors from doing so). Where minors have been treated as adults, *see, e. g.*, New York Penal Law § 30.00 (McKinney Supp. 1979–1980) (youthful offender statute); New York Pub. Health Law § 2305(2) (McKinney 1977) (allowing treatment for venereal disease regardless of age), that practice has been afforded by statute and not by judicial fiat. Moreover, specific problems of public health and safety seem to be the domain covered.

While a proper solicitude for state sovereignty might lead us to abstain where a plausible claim of saving construction is made, we will not elevate resourceful conjurations to probable interpretations in the name of pyrrhic comity. If that were the law, few cases would withstand an abstention attack. In *Naprstek v. City of Norwich*, 545 F.2d 815, 818 (2d Cir. 1976) (per curiam), we refused to refrain from constitutional examination of a New York statute because we found the suggested alternative construction "would require the state courts to supply a missing term in the ordinance." In *Pharmaceutical Society, supra*, 586 F.2d at 957, we declined to forbear, and stated, "Abstention could hardly be justified on the theory that the state court might invent an interpretation at odds with the statute's clear language." *Accord, Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971); *Zwickler v. Koo-*

*ta,* 389 U.S. 241, 249–52, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967); *Quinn v. Aetna Life & Cas. Co.,* 616 F.2d 38, 41 (2d Cir. 1980) (per curiam). The crystalline parlance of section 15 has remained unchanged since its enactment over seventy years ago.[9]

The propriety of our rule is confirmed by the Supreme Court's decisions in *Bellotti v. Baird,* 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976), and *Planned Parenthood v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976), decided the same day. In both cases, a state statute required parental consent whenever a female under eighteen desired an abortion. If the parents refused, the statute in *Bellotti* allowed a court to override that refusal "for good cause shown;" the statute in *Danforth* was silent. The Supreme Court held abstention proper in *Bellotti,* since state courts might well cure the constitutional objections through construction of the ambiguous "good cause" term in the statute.[10] The statute in *Danforth* was strikingly similar to section 15: short, clear and unambiguous.[11] The Supreme Court found abstention improper.

Finally, we cannot ignore the urgent equities of plaintiffs' complaint. Aside from our usual reluctance to relegate civil rights plaintiffs to the state courts, *see Wright v. McMann,* 387 F.2d 519, 525 (2d Cir. 1967), this case presents a pressure of time which counsels strongly against the use of abstention. Ricardo has lived as an illegitimate child for over a year; his parents have cohabited out of wedlock for a year-and-a-half. If Maria and Raoul have a constitutional right to marry, its exercise should not be postponed. Such facts "[do] not permit us the luxury of a *Pullman* abstention ...." *Billington v. Hayduk,* 565 F.2d 824, 825 (2d Cir. 1977) (per curiam). *Accord, Harman v. Forssenius,* 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); *Gangemi v. Sclafani,* 506 F.2d 570, 572 (2d Cir. 1974).

### III.

Our decision today does not imply that a colorable claim of saving construction should be ignored. Nor does it require a federal court to reach the constitutional merits of a slightly vague state statute every time a violation of civil rights is alleged. We hold here only that the remote and implausible suggestions of ambiguity surrounding the statute before us do not justify abstention. In drawing the boundary of federalism as we do, we acknowledge the difficulty of our craft in this area of the law.

The order of dismissal is reversed. Since the issue of the constitutionality of section 15 has not been decided below or briefed or argued here, we do not reach it. *See, e. g., McRedmond v. Wilson, supra,* 533 F.2d at 764; *Pierce v. La Vallee,* 293 F.2d 233, 236 (2d Cir. 1961). The case is remanded for proceedings consistent with this opinion.

---

9. For persons under the age of majority, the parental consent requirement has remained intact since the first decade of this century. *See* New York Dom.Rel.Law § 15 (Birdseye, Cumming & Gilbert 1909). New York in 1974 lowered the age of majority from twenty-one years to eighteen, and § 15 was amended accordingly. *See* 1974 N.Y.Laws, ch. 920, § 4. The parental consent provision was not altered.

10. The Supreme Judicial Court of Massachusetts answered the state law questions. *Baird v. Attorney General,* 371 Mass. 741, 360 N.E.2d 288 (1977). The federal district court found the statute unconstitutional as construed, and the Supreme Court affirmed. *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979).

11. The statute in *Danforth* provided in part: Section 3. No abortion shall be performed prior to the end of the first twelve weeks of pregnancy except:

\*    \*    \*    \*    \*    \*

(4) With the written consent of one parent or person in loco parentis of the woman if the woman is unmarried and under the age of eighteen years, unless the abortion is certified by a licensed physician as necessary in order to preserve the life of the mother. *Danforth, supra,* 428 U.S. at 85, 96 S.Ct. at 2847.