Kaye, J.
(concurring). While joining in the court’s opinion, I wish separately to record my understanding that remittal to the Family Court for a custody determination in Sheila’s best interest invites consideration of all available options, including continued and long-term custody with Sheila’s foster family. (See Matter of Bennett v Jeffreys. 40 NY2d 543; and Matter of Bennett v Marrow, 59 AD2d 492.)
*391 The Legislature in subdivision 1 of section 384-b of the Social Services Law has placed a priority on the rights of a natural parent, and has by statute prescribed specific grounds for the extraordinary measure of forever severing a parent’s rights on account of permanent neglect. (Social Services Law, § 384-b, subd 7.) The specific grounds for terminating a parent’s rights for permanent neglect do not include evaluation by the court of whether or not termination would serve the best interest of the child. (Matter of Sanjivini K., 47 NY2d 374.) Because of the requirements of the statute I join in reversing the order below, which rested on the court’s perception of the best interest of the child without following the statutory prescription. The record does not establish that the agency had made “diligent efforts to encourage and strengthen the parental relationship,” or had, before deciding not to exercise such efforts, reached the conclusion that any such efforts would be detrimental to the best interest of the child.
But custody is a different matter from termination of parental ties.
The court’s opinion, in its dispositional section, calls particular attention to language in Matter of Sanjivini K. (supra), to the effect that a long delay in obtaining custody is not to be counted against the natural parent in determining the child’s best interest. Neither is the lapse of time necessarily without significance in determining custody. For five and one-half of her tender years, having been born with heroin withdrawal symptoms and lived briefly elsewhere, Sheila has made her home with her foster family. She has never lived with her natural father, or his mother or sister, who would care for Sheila. Expert testimony established that the child suffers severe separation anxiety, and is deeply attached to her foster parents. As we wrote in another connection in Matter of Bennett v Jeffreys (40 NY2d 543, 550, supra), “the child may be so long in the custody of the nonparent that, even though there has been no abandonment or persisting neglect by the parent, the psychological trauma of removal is grave enough to threaten destruction of the child.”
The child-care agency is rightly taken to task for its failure to exercise diligent efforts to encourage and *392 strengthen the parental relationship. However, the child should not now suffer in any way for the agency’s failures. The natural father’s prolonged drug and alcohol abuse and unsuccessful efforts to rid himself of both, his lack of candor about these problems, and his lethargy (despite a college education and a regular job) in establishing filiation and planning for Sheila’s future may not, because of the agency’s failure to fulfill its statutory duty, constitute permanent neglect under subdivision 7 of section 384-b of the Social Services Law. But they are surely among the relevant factors to be considered in determining with whom Sheila should live. Given that Sheila is nearly seven years old, together with all the other circumstances, the biological fortuity of having fathered a child cannot be placed above the child’s best interest in determining her custody.
Judges Jasen, Jones, Wachtler, Meyer and Kaye concur with Chief Judge Cooke; Judge Kaye concurs in a separate opinion; Judge Simons taking no part.
Order reversed, etc.