OPINION OF THE COURT
Chief Judge Cooke.
This appeal addresses the denial of appellant’s petition to regain custody of his children, not from his spouse or a *207 former spouse, but from a third party. Family Court, concluding there were “extraordinary circumstances” present, applied the best interests of the children standard and denied the petition for custody. A sharply divided Appellate Division affirmed. We now reverse.
Petitioner is the father of three children born in 1971, 1972 and 1974. During the summer of 1974, after his wife refused to share responsibility for the children or the household, petitioner undertook to care for the children himself. A series of temporary arrangements proved unsuccessful, and petitioner then entrusted the children to respondent Kelly, who was a friend of his father.
Family Court found that petitioner visited the children in the fall of 1974 and made four payments of support pursuant to a support order. Support payments were discontinued and, during 1975 petitioner had only one or two contacts with his children.[1] At one point, the court found, petitioner refused to consent to an operation for one of his children.
Apparently, petitioner re-established regular contact with the offspring sometime in 1976. Beginning in 1977, petitioner made efforts to obtain their custody and, following his divorce and remarriage in the fall of that year, commenced this custody proceeding. At the time of commencement, petitioner was in regular contact with his children.
In denying the petition, Family Court first noted that under Matter of Bennett v Jeffreys (40 NY2d 543) an abandonment was an “extraordinary circumstance” which would trigger the best interests of the children test. The court then went on to conclude that, in custody matters, an abandonment may be established by a lesser showing than the concept traditionally requires. Thus, the court held that a “passive” abandonment — i.e., conduct on the part of the parent not rising to the level of a statutory or common-law abandonment, constitutes an “extraordinary circumstance” within the meaning of Bennett.[2]
*208 On appeal, the Appellate Division refused to adopt the “passive” abandonment concept, but found extraordinary circumstances in the length of custodial interruption, coupled with other “extenuating circumstances”. Two Justices dissented, reasoning that the court was unjustifiably diluting the rule of Bennett.
Historically, it has been the law in this State that, as between a parent and a third person, parental custody of a child may not be displaced absent grievous cause or necessity (e.g., Matter of Bennett v Jeffreys, 40 NY2d 543, 548, supra; People ex rel. Anonymous v Anonymous, 10 NY2d 332, 335; People ex rel. Kropp v Shepsky, 305 NY 465, 468-469). [3] Although earlier characterized as involving the “primacy of parental rights” (People ex rel. Kropp v Shepsky, supra, at p 469; People ex rel. Portnoy v Strasser, 303 NY 539), the rule in actuality is founded upon the “generally accepted view that a child’s best interest [is to be] raised by its parent unless the parent is disqualified by gross misconduct” (Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196, 204). Rather than artificially exalting the “rights” of the parent at the expense of the well-being of the child, this rule fosters both interests by recognizing that they ordinarily converge.
Only recently, we had occasion to review and characterize the narrow situations in which a court is warranted in considering whether the best interests of the child dictate displacement of parental custody. Absent “surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances” the court declared, the “State may not deprive a parent of the custody of a child” (Matter of Bennett v Jeffreys, 40 NY2d 543, 544, supra). Even when such “extraordinary circumstances” are present, however, the court must first inquire into the best interests of the *209 child before making a custody determination (id., at p 548). -In certain circumstances, those interests may best be served by reposing custody in the parent.
Nowhere does the opinion in Bennett undertake to define the concept of abandonment. At the same time, Bennett does not suggest that the traditional concept of abandonment was being discarded. Indeed, the court expressly noted that abandonment was not involved (40 NY2d, at p 545, supra). Reliance upon Bennett for the proposition that something less than an actual abandonment constitutes an extraordinary circumstance is thus misplaced.
Examination of prior decisions likewise reveals no basis for relaxing the definition of abandonment when evaluating whether extraordinary circumstances exist. To the contrary, the cases have applied the prevailing standard for abandonment (see, e.g., People ex rel. Anonymous v Anonymous, 10 NY2d 332, 337, supra) before supplanting parental custody. Nor would it be wise or desirable to create an open-ended, amorphous concept to replace the now well-developed law of abandonment. Such replacement would signify that we would have arrived at a tragic pass in social history — when parental rights could be overlooked and lost so easily.
Thus, it was error for the court to have concluded, in the absence of an abandonment as defined by statute, that petitioner abandoned his child (see, also, Matter of Bennett v Jeffreys, 40 NY2d 543, 544, supra). The definition of abandonment for determining whether an extraordinary circumstance is present within the meaning of Bennett v Jeffreys (supra) simply does not differ from the classic abandonment principle, as modified by modern developments (see Matter of Corey L v Martin L, 45 NY2d 383, 388-392).[4]
Finally, there is no basis on this record for finding such a prolonged interruption of custody as to constitute an extraordinary circumstance. As this court recently noted, where a period of separation is attributable to the parent’s efforts *210 to regain custody lawfully, that separation is entitled to little, if any, consideration (Matter of Sanjivini K., 47 NY2d 374, 381-382). Although Sanjivini involved termination of parental rights, rather than custody, the. court also stated that “it is doubtful whether it could be found to be in the child’s best interests to deny her [parent’s] persistent demands for custody simply because it took so long * * * to obtain it legally” (47 NY2d, at p 382). Since a large portion of the separation here occurred during the father’s informal and formal attempts to obtain custody, the custodial disruption does not rise to the level of an extraordinary circumstance. Quite bluntly, a child is not a piece of property over whom title may be acquired by adverse possession.
Accordingly, the order of the Appellate Division should be reversed, and the matter remitted to Family Court, Onondaga County, with directions to grant the petition.

. The trial court, as it was entitled to do, discredited petitioner’s testimony that 'he visited frequently and instead adopted respondent Kelly’s testimony . that contact was infrequent.

. Given our disposition of the matter, we find it unnecessary to explore *208 further the possible meanings of the term “passive” abandonment. It would seem, however, that the concept is open-ended enough to apply whenever a parent acquiesces in another having custody of the children, no matter how frequent or substantial the contact between parent and child.

. Involved here is a private, unsupervised placement and thus common-law principles are applicable (Matter of Bennett v Jeffreys 40 NY2d 543, 545, supra). It is not contended on this appeal that agency involvement in this case, of which there was some, brought statutory law into play.

. We have no occasion to reach the issue of the best interests of the children, but note that it is by no means certain that such inquiry should lead to disruption of parental custody in these circumstances.