■ In the Matter of ASHFORD N., Appellant, v HASSAN A., Respondent. — In a custody proceeding, petitioner, the subject infant's natural father, appeals from an order of the Family Court, Queens County (Pitaro, J.), dated June 15, 1981, which, after a hearing, denied his petition and awarded custody to respondent, the infant's maternal uncle. Order reversed, without costs or disbursements, and matter remitted to the Family Court for a new hearing and determination in accordance herewith. Custody of the infant is to remain with respondent pending the new hearing and determination. The subject child was born out of wedlock on February 12, 1976. Petitioner is the child's father and the respondent's sister was the child's mother. The mother died on October 6, 1979. At the custody hearing, the parties presented contradictory histories as to where the infant and mother resided prior to her death, and where the infant resided subsequent to her death. Petitioner testified that he and the mother cohabited prior to the infant's birth, and that the three of them lived together as a family unit until the mother's death. He stated that just prior to the mother's death, they moved into an apartment in respondent's house, and, as the mother's health deteriorated, the maternal grandmother (who also lived in respondent's house) assisted in caring for the infant. Petitioner also asserted that following the mother's death, he and the infant continued to reside in respondent's house, and that the grandmother cared for the infant while he went to work. Respondent's version of the events was that the mother and infant had always resided with him and his family, and that they had never lived with petitioner. The Family Court credited the respondent's testimony and also found that petitioner's visits with the infant had been infrequent and of short duration and that he had not contributed to the support of the infant. The court stated: "The facts of this case reflect an insufficient interest on the part of petitioner in his child's life, and his failure to support his son shows parental irresponsibility. Petitioner acquiesced in this respondent's custody of his son for eight months, from the time [the child's] mother died until the filing of the petition. Petitioner has lived apart from his son all the child's life and has had little, if any, significant contact with him. In light of these facts, this court finds the requisite extraordinary circumstances which trigger the best interest of the child standard. This finding is made without a finding of abandonment, neglect, or unfitness on the part of petitioner." The court then concluded that the infant's best interest required an award of custody to respondent. It is well settled that in a custody dispute between a nonparent and a natural parent, there must first be a showing of extraordinary circumstances in order to defeat the natural parent's right to custody, and even upon such a showing, the court must still inquire into the infant's best interests before awarding custody (*Matter of Dickson v Lascaris*, 53 NY2d 204; *Matter of Bennett v Jeffreys*, 40 NY2d 543; *Matter of Merritt v Way*, 85 AD2d 666). In

*Matter of Bennett v Jeffreys (supra,* p 544), the court declared that absent "surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances", the State may not deprive a natural parent of custody of an infant. As indicated, the Family Court specifically stated that it was awarding custody without finding abandonment, neglect or unfitness. The facts recited, however, do not constitute "like extraordinary circumstances" within the meaning of *Matter of Bennett v Jeffreys (supra)* and *Matter of Dickson v Lascaris (supra).* In fact, the Family Court, to support its conclusion that "[l]ack of interest in one's child shown by a failure to support the child and a shirking of parental responsibilites coupled with acquiescence in another's custody" constituted extraordinary circumstances, relied upon the decision in *Matter of Dickson v Lascaris* (75 AD2d 47) which was later reversed by the Court of Appeals. Further, the court asserted that extended separation from the child with sporadic contacts might constitute extraordinary circumstances without reaching the level of abandonment. In *Matter of Dickson v Lascaris* (53 NY2d 204, 209, *supra),* the Court of Appeals specifically stated that there was no basis for "relaxing the definition of abandonment when evaluating whether extraordinary circumstances exist * * * [n]or would it be wise or desirable to create an open-ended, amorphous concept to replace the now well-developed law of abandonment." Thus, the factors relied upon by the Family Court do not constitute extraordinary circumstances sufficient to trigger an inquiry into the infant's best interests (see *Matter of Dickson v Lascaris, supra; Matter of Bennett v Jeffreys, supra).* We note, however, that certain information revealed in posthearing psychological evaluations of the parties (conducted for purposes of establishing visitation) raises questions as to petitioner's fitness to have custody of the infant. This aspect was not fully developed at the hearing and, accordingly, a new hearing should be held. The parties may also present further evidence on such of the other issues as they deem appropriate. Pending the outcome of such hearing, the best interests of the child dictate continuation of custody in respondent. Damiani, J. P., Lazer, Gulotta and O'Connor, JJ., concur.