OPINION OF THE COURT
Philip C. Segal, J.
The present custody petition under Family Court Act § 651 *497 (b) concerns Reginald C., a child now almost two years of age, who has been in foster care placement since birth. His paternal aunt commenced this proceeding and seeks an order discharging the child to her custody so that she can provide a home for him. The foster parents, with whom the child has always resided and who wish to adopt him, resist this effort; they move to dismiss the petition on the ground that the aunt lacks standing to sue for custody because (i) the child’s parents never married, (ii) no adjudication of the father’s paternity exists, and (iii) the aunt does not set forth sufficient facts which otherwise would grant standing to her as a nonparent.
I.
Reginald C. was born in Lincoln Hospital on December 6, 1989. Immediately after his birth, the Department of Social Services filed a neglect proceeding against his mother, Deborah C., based on a claim that Reginald was born with a positive toxicology for cocaine and that the mother was not enrolled in a drug rehabilitation program. After a fact-finding hearing, the allegations of neglect were sustained and, at the age of one month in January 1990, the Family Court placed Reginald in foster care where he remains to date. Throughout his placement, the child has been in the care of the same foster parents: Diana H. and William P. As noted, Reginald’s parents never married and no adjudication of paternity as to the father has been made.
The paternal aunt, Linda B., commenced this custody proceeding in April 1991. In her petition, the aunt alleges that her brother is Reginald’s father, that she just learned of the child’s status in foster care as set forth above, that she can provide a home for Reginald within his extended family, and that his interests require that she be awarded custody. The original respondents to the proceeding were the Commissioner of Social Services (with whom the child was legally placed), the child’s mother, and the child’s father (who supports the aunt’s petition). Reginald’s foster parents have statutory standing to be heard and were granted leave to intervene (Social Services Law § 383 [3]); they seek to retain custody and, ultimately, to adopt the child. The foster parents now make this pretrial motion to dismiss the petition.
The foster parents maintain that, because the parents were not married, a prior declaration of paternity is required per se before a father, or by extension, a paternal relative has *498 standing to seek custody of a child born out of wedlock. In addition, the foster parents maintain that the aunt’s petition does not set forth facts which, if true, would (i) constitute "extraordinary circumstances” and (ii) establish that the best interests of the child compel an award of custody to her (see, Matter of Bennett v Jeffreys, 40 NY2d 543 [1976]). For the reasons set forth below, the foster parents’ motion is denied.
II.
Families have a recognized constitutional right to live together free from the unwarranted interference of third parties; this encompasses the right of parents to have custody of their children and the concomitant right of children to be raised by and live with their parents. (Stanley v Illinois, 405 US 645, 651 [1972]; Matter of Bennett v Jeffreys, supra, 40 NY2d, at 546; Matter of Dickson v Lascaris, 53 NY2d 204, 208 [1981].) The Supreme Court has observed that this constitutional entitlement is a liberty interest under the Fourteenth Amendment (Stanley v Illinois, supra, 405 US, at 651), and, also, an "intrinsic human right” (Smith v Organization of Foster Families, 431 US 816, 845 [1977]), with origins older than the Constitution itself (Griswold v Connecticut, 381 US 479, 486 [1965]).
Following from these principles, the New York Court of Appeals has stressed, as a matter of State law, that a court does not have the power to interfere with parental custody solely because it determines that "someone else could do a 'better job’ of raising [a] child”. (Matter of Bennett v Jeffreys, supra, 40 NY2d, at 548.) Interference with parental custody is constitutionally prohibited absent judicial findings that (i) extraordinary circumstances exist which would "drastically affect the welfare of the child”, and (ii) the facts before the court establish that the child’s best interests require such interference with parental rights. (Supra, at 548-549.) After explaining that the first part of the above test can only be found to exist in rare situations, the Court of Appeals noted that such extraordinary circumstances may include: surrender for adoption (Social Services Law §§ 383-c, 384); abandonment; parental unfitness; persistent neglect; unfortunate or involuntary lengthy disruption of parental custody; or "other equivalent but rare * * * circumstance.” (40 NY2d, at 549.) Since a finding of extraordinary circumstances is only the first part of a two-part requirement, the court is mandated, after such a *499 finding is made, to evaluate the "best interests of the child” and to direct a disposition which provides for those interests.
With this as background, the limited question before this court is whether the aunt’s petition, on its face, establishes standing so that she may maintain this proceeding and present evidence at a trial in support of her allegations. In the present procedural context, the question is whether the aunt’s petition states a cause of action for custody by a third party under the above legal principles. (Matter of Alison D. v Virginia M., 77 NY2d 651 [1991].) For the purposes of this motion, the allegations in the aunt’s petition are deemed true. (Morone v Morone, 50 NY2d 481 [1980]; Matter of Alison D. v Virginia M., supra, 77 NY2d, at 655, n.) As follows, the court concludes that the petition is sufficient.
The aunt does not lack standing to sue for custody because Reginald’s parents never married and no adjudication of the father’s paternity exists. When a putative father seeks custody of his child, an adjudication of his paternity is not a precondition to the father’s claim. Rather, the father’s status can be determined as a matter of fact in the custody proceeding itself. (Raysor v Gabbey, 57 AD2d 437 [4th Dept 1977]; Matter of Ricky M. v Sharon B., 49 AD2d 1035 [4th Dept 1975]; Matter of Gloria S. v Richard B., 80 AD2d 72, 78 [2d Dept 1981] [Mangano, J., concurring in part and dissenting in part]; Matter of Boatwright v Otero, 91 Misc 2d 653 [Fam Ct 1977]; see also, Family Ct Act § 564.) Likewise, in the present proceeding, the aunt has alleged in the petition that she is related to Reginald based on her brother’s paternity. This issue does not have to be resolved before the aunt may be heard; rather, she will have the burden of proving at trial that her brother is Reginald’s father, if she is to have her claim for custody considered.
Viewed most favorably to the aunt (Cohn v Lionel Corp., 21 NY2d 559 [1968]), the petition alleges extraordinary circumstances as to the mother on the basis of her present unfitness to care for Reginald.* In addition, the petition sets forth sufficient facts to justify consideration of the aunt as a potential custodian if such unfitness were, in fact, found to exist. The care of children by relatives is often the best possible arrangement, when their parents are unable to provide them with a home due to economic or other hardships. Such ar *500 rangements allow children to remain in the extended family and to maintain important ties to their parents, siblings and other relatives. Reliance on extended family for such purposes has a long tradition in the United States. (See, Moore v City of E. Cleveland, 431 US 494, 507-511 [1977] [Brennan, J., concurring].) Indeed, consideration of relatives as a resource for neglected children is now required in New York by statute. (Family Ct Act § 1017; see also, Family Ct Act § 1035 [f]; § 1055 [a].) Accordingly, if extraordinary circumstances are found to exist as against the mother, the court must then weigh the comparative advantages of awarding custody to a relative, as opposed to the desirability of the child remaining in foster care and possibly being adopted, if grounds to terminate parental rights are found to exist (Social Services Law § 384-b; Matter of Bennett v Jeffreys, supra, 40 NY2d, at 550; Obey v Degling, 37 NY2d 768, 771 [1975]). In this case, the allegations set forth by the aunt justify a trial on the issue of whether she can provide Reginald with the best possible custodial alternative.
For the reasons stated above, the motion is denied.

 The father consents to an award of custody to the aunt, thereby obviating any need to apply the present analysis to him.