[608 NYS2d 493]

In the Matter of DUTCHESS COUNTY DEPARTMENT OF SOCIAL SERVICES, on Behalf of CODY M. and Another, Respondent. MARK M., Appellant, et al., Respondent.

Second Department, February 28, 1994

## APPEARANCES OF COUNSEL

*Merril Sobie,* White Plains, for appellant.

*Ian G. MacDonald, County Attorney* of Dutchess County, Poughkeepsie *(Carol A. Bogle* of counsel), for respondent.

*Barry H. Friedman, Law Guardian,* Poughkeepsie, for infants.

## OPINION OF THE COURT

Per Curiam.

In a child protective proceeding pursuant to Family Court Act article 10, a parent charged with abuse or neglect has the right to be present at the fact-finding hearing. Family Court Act section 1041 mandates the presence of the parents or at least "every reasonable effort" to notify them prior to the commencement of the fact-finding hearing, while section 1042 addresses the contingency of a parent's nonpresence for any reason, willful or nonwillful, during the course of the fact-finding hearing. The purpose of the statute is to ensure that there is a full and orderly exploration of the evidence and facts surrounding the alleged abuse and neglect. Where, as here, a parent's failure to appear at a fact-finding hearing is not willful, then, under the second sentence of section 1042, the Family Court *must* grant the parent's request for a rehearing. Since the Family Court in the instant case did not comply with the statutory mandate, the fact-finding and dispo-

sitional orders must be vacated and the matter remitted to the Family Court for a new fact-finding hearing. Although the primary issue to be addressed on this appeal involves the proper applicability of Family Court Act § 1042, a secondary issue involving the timely and expeditious handling of cases such as this will also be addressed.

I

By petition dated August 22, 1989, the Dutchess County Department of Social Services alleged that the father Mark M. and his wife Judy M. sexually abused their two children, Cody M., age three, and Collette M., age six. The father and his attorney attended the first 14 days of a fact-finding hearing on the petition. On the fourteenth day of the hearing, June 26, 1990, the Family Court, aware of a Navy court martial proceeding against the father that was scheduled for July, adjourned the hearing until October 12, 1990. In July 1990 the father was court-martialed and sentenced to a term of one year's imprisonment at the Disciplinary Barracks in Fort Leavenworth, Kansas. By letter dated July 25, 1990, the father's attorney informed the Family Court of the father's status and requested that the court arrange to have the father produced for the October hearing dates. The court made one telephone call and wrote two letters to the military authorities requesting information as to the proper procedure for securing the father's presence at the hearing. Although the father was not produced for the October hearing dates and his attorney was not present on those dates, the hearing continued in their absence.

The father's attorney made a motion for a mistrial and a new fact-finding hearing based upon the continuation of the hearing in the father's absence. The Family Court denied the motion. The court then rendered a fact-finding order finding that both parents had sexually abused the children and thereafter issued dispositional orders dated November 13, 1991 against both parents. The father moved to vacate the dispositional order against him and sought a new fact-finding hearing based upon his absence at the fact-finding hearing, which was not willful. The court denied the motion, stating that Family Court Act § 1042 mandates such relief "only when the *child* is not 'represented by counsel, a law guardian or a guardian ad litem' " (emphasis in original) and that the children had been represented by a Law Guardian throughout the proceedings.

We find that the Family Court erred in its rulings and, accordingly, remit the matter for a new fact-finding hearing.

■ The Family Court was correct to the extent that it observed that the statute permits a court to proceed in the absence of a parent so long as the child is represented. Thus, the first sentence of Family Court Act § 1042 provides, in pertinent part, that "If the parent * * * is not present, the court may proceed to hear a petition under this article only if the child is represented by counsel, a law guardian, or a guardian ad litem". However, the Family Court was incorrect in basing its ruling upon the first sentence of the statute only without also reading the clear mandate of the second sentence which provides that: "If the parent * * * thereafter moves the court that a resulting disposition be vacated and asks for a rehearing, the court *shall* grant the motion on an affidavit showing such relationship * * * unless the court finds that the parent * * * willfully refused to appear at the hearing, in which case the court may deny the motion" (Family Ct Act § 1042 [emphasis added]).

In *Matter of Laticia B.* (156 AD2d 681, 682-683), this Court observed: "We recognize that the State and the child have an urgent interest in having this matter resolved. This interest, however, must be balanced against the parent's interest *(see, Matter of Raymond Dean L.,* 109 AD2d 87, 90). Family Court Act § 1042, by its terms, recognizes this. The Legislature has enacted a statute providing a parent additional protection to enable him [or her] to be heard on matters concerning his [or her] child. It is clear from this that the parent's rights are equally as important as those of the other parties and are not to be disregarded absent a convincing showing of waiver".

In an analogous situation, *Matter of Kendra M.* (175 AD2d 657), although the mother's attorney had advised the court that the mother was not present at the fact-finding hearing because she was incarcerated without bail, the court conducted the hearing in the mother's absence and thereafter found that the allegations of neglect had been sustained. The mother appeared with her attorney at the dispositional hearing and stipulated to an offer of proof. The petitioner made an offer of proof and recommended that the mother's parental rights be terminated. In response, the mother's attorney stated that, after conferring with his client, he had nothing further to offer. The mother never moved to vacate the dispositional order or for a rehearing pursuant to Family

Court Act § 1042. On appeal, the Court held that the adequacy of counsel's representation was questionable and that the mother neither willfully refused to appear nor waived her presence at the hearing. The Court also noted that it was undisputed that the mother's absence was due to her incarceration, that the court was aware of that fact, and "that the court, instead of making arrangements to have [the mother] brought over from the jail to be present at the hearing or adjourning the hearing to a later date when [the mother] could be present, conducted the fact-finding hearing in her absence" *(Matter of Kendra M., supra,* at 658). The Court thereupon remitted the matter to the Family Court for a new hearing.

In the instant case, the evidence is sufficient to establish that the father did not willfully refuse to appear. Not only had the father attended each of the first 14 days of the proceeding until he was incarcerated in Kansas, the father's attorney had also requested, some three months in advance of the October hearing dates, that the court take the necessary steps to ensure that he be produced for the October hearing dates. Moreover, the court indicated that despite its efforts to have the father produced for the hearing, the Federal Government had not cooperated in producing him. It is clear, therefore, that the father wanted to attend the proceeding but that it was beyond his control to effectuate his presence. Accordingly, the father's absence was clearly not willful, and he is entitled to a new fact-finding hearing as a matter of law *(see, Matter of Kendra M., supra; see also, Matter of the Commissioner of Social Servs. v Rafael B.,* 186 AD2d 253; *Matter of Laticia B., supra; cf., Matter of Jamel H.,* 187 AD2d 513).

We find no merit to the father's remaining contentions.

## II

■ Having disposed of the main issue in this case, we would now like to take this opportunity to comment on a problem which has long concerned this Court, notably the practice of trying cases piecemeal so as to extend the trial over periods of weeks or months. The practice is not unique to this case or this Judge, but is a common practice in the Family Court. Because the case before us is illustrative of the problems that arise when cases are extended over a long period of time due to a piecemeal approach, we will now address ourselves to this practice. We are certainly not unmindful of the particular

problems which confront Judges in the Family Court, which include a crushing caseload as well as legislatively imposed time constraints in various proceedings. Nevertheless, we cannot help but note that 14 months elapsed from the date the petition was signed in this proceeding to the final hearing date.

In this case, the petition alleging that the appellant and his wife had sexually abused their two children was dated August 22, 1989. The fact-finding hearing commenced almost six months later, on February 9, 1990, and continued for a total of 14 days stretched out over several months as follows: February 9, 14, 15, and 16; March 19; April 19, 20, 23, and 24; June 11, 15, 21, 25, and 26. At this point there was an adjournment to October 12, 1990, because the father would be involved in a military court martial proceeding in the early part of July. The fact-finding hearing recommenced on October 12, and continued on October 15 and 19, on which days the father was not present. The fact-finding order was issued on June 28, 1991, and the dispositional order was issued November 13, 1991.

As an illustration of the problem confronting the courts, it should be observed that the first 14 days of the hearing, during which the father was available, were spread out over a period of five months. Clearly, protracted hearings on a piecemeal basis such as occurred here, rather than the court continuing day to day until the case is completed, have a profound effect on our justice system. It is only natural that a case should proceed more rapidly when it is tried on a day-to-day basis, since the issues are fresh in everyone's mind, and there is no need to repeat anything which has occurred in the past. Moreover, legal fees are substantially escalated when a trial is spread out over many months, because the lawyers must review and reprepare each time the case appears for trial. However, the most tragic effect is the wrenching emotional problems which prolonged litigation causes for all of the parties. In Family Court matters involving children, the problem is exacerbated because the lives of these children are placed on hold for long periods of time, thereby depriving them of stability and a wholesome home atmosphere during their formative years.

The consequences of the prolonged hearings in this case are disturbing and will have a detrimental effect on the children. While it was not possible for the court to have any input on when the court martial proceeding would commence, the court

was aware that the father would be required to attend that proceeding when scheduled by the military authorities.

Indeed, the court had been advised by the father's attorney at the close of the hearing on April 24 that it was very likely that the court martial proceeding would commence either the last week in June or the first week in July. It is clear then that had the court proceeded in a more expeditious manner, the instant Family Court proceeding would have been completed long before the court martial took place. If that had been done, the father would have been present on all of the hearing dates, thereby eliminating the need to require a new hearing.

The prolongation of the proceeding, combined with the error which requires reversal and a new hearing, has the tragic result of requiring these young children to testify once again about the alleged acts committed on them, thereby further damaging their lives.

Something must be done to speed up the judicial process. In this case, delay causes the children to further undergo and relive the trauma of these incidents, thereby further scarring their lives forever.

We recognize the complexity of the problem. We understand the day-to-day emergencies in the Family Court which may cause delays in pending trials. But those delays do not require long adjournments. It is possible to interrupt a case in order to dispose of emergency matters and continue thereafter. While it may not be possible to continue on a day-to-day basis because of the nature of the court, it cannot be said that the first 14 days of this fact-finding hearing were spread out over five months because of court emergencies. It is hard to understand how there could have been a month adjournment from the last date in February and the one date that the case was tried in March and then a further one month's adjournment. Family Courts must seek ways to expedite matters in order to better serve the people. If legislation is required to accomplish this, appropriate action should be taken.

Although this particular case involves the Family Court, all of these comments are equally applicable to matrimonial matters in the Supreme Court, particularly those cases involving custody and visitation. The only difference is that the reasons for the delay in the Family Court generally are not applicable to matrimonial actions in the Supreme Court. While the Family Court may have a reasonable excuse for the

delays that occur because of the nature of the matters that come before those Judges, and the pressing emergencies brought before them, it is difficult to find an excuse for the prolongation of a matrimonial trial in the Supreme Court for a period of over six months or a year. In the Supreme Court, it is more difficult to justify the failure to continue a case on a day-by-day basis until it is completed. Recently, attempts to evaluate the problems which exist in matrimonial cases and to correct them have resulted in new rules affecting matrimonial practitioners. While matrimonial lawyers are not to be lightly excused for dilatory tactics, the Bench should not add to the problem by allowing attorneys to drag a case on in the discovery stages and should not further exacerbate the problem by prolonging a trial over a period of months rather than continuing it on a day-to-day basis until completion.

The failure of the Trial Judge to expeditiously and diligently manage such cases leads to an escalation in fees and to an unnecessary delay in bringing these cases to a speedy conclusion. We cannot overlook the dissatisfaction voiced by so many with a system which allows matrimonial matters to drag on for long periods of time, thereby affecting the lives of children and the ability of individuals to get on with their lives freed from the litigation which has brought them so much unhappiness and trauma.

Accordingly, the order entered April 15, 1992 is reversed insofar as appealed from, on the law, without costs or disbursements, the order dated January 10, 1991, the fact-finding order dated June 28, 1991, insofar as it relates to the appellant, and the dispositional order dated November 13, 1991, against the appellant, are vacated, the motion is granted, and the matter is remitted to the Family Court, Dutchess County, for a new fact-finding hearing.

MANGANO, P. J., THOMPSON, BALLETTA, MILLER and JOY, JJ., concur.

Ordered that the order entered April 15, 1992 is reversed, insofar as appealed from, on the law, without costs or disbursements, the order dated January 10, 1991, the fact-finding order dated June 28, 1991, insofar as it relates to the appellant, and the dispositional order dated November 13, 1991, against the appellant, are vacated, the motion is granted, and the matter is remitted to the Family Court, Dutchess County, for a new fact-finding hearing.