OPINION OF THE COURT
Philip C. Segal, J.
In this child protective proceeding, respondent Ameen A. is *65 charged with the sex abuse of his eight-year-old stepdaughter Zena. Among other things, the child’s mother, respondent Lyndora G., is charged with knowledge of the abuse and allowing it to continue. To support these claims, the Commissioner of Social Services (petitioner herein) has indicated that she intends to offer Zena’s testimony at the fact-finding hearing. On the grounds that such testimony would be potentially traumatic for the child when given in respondents’ presence, her Law Guardian now moves for an order directing that Zena testify outside of respondents’ presence in camera or, alternatively, that a screen be placed in the courtroom to prevent Zena from seeing the respondents as she testifies against them. For the following reasons, the court finds that the Law Guardian has failed to demonstrate sufficient necessity for the relief he seeks and, on that basis, the motion is denied.
As this court has noted in another context: "Families have a recognized constitutional right to live together free from the unwarranted interference of third parties; this encompasses the right of parents to have custody of their children and the concomitant right of children to be raised by and live with their parents. (Stanley v Illinois, 405 US 645, 651 [1972]; Matter of Bennett v Jeffreys, supra, 40 NY2d, at 546; Matter of Dickson v Lascaris, 53 NY2d 204, 208 [1981].) The Supreme Court has observed that this constitutional entitlement is a liberty interest under the Fourteenth Amendment (Stanley v Illinois, supra, 405 US, at 651), and, also, an 'intrinsic human right’ (Smith v Organization of Foster Families, 431 US 816, 845 [1977]), with origins older than the Constitution itself (Griswold v Connecticut, 381 US 479, 486 [1965]).” (Matter of Linda B. v Deborah C., 152 Misc 2d 496, 498 [Fam Ct 1991].)
Following from these principles, the Legislature has declared, as a matter of State law, that due process must be accorded before these related rights may be superceded by court order. (Family Ct Act § 1011; Matter of Marie B., 62 NY2d 352 [1984]; Matter of Hanson, 51 AD2d 696 [1st Dept 1976].) Moreover, in enacting Family Court Act § 1041 (a), the Legislature has recognized that such due process includes — at least presumptively — the right of respondents in child protective proceedings to be present personally at all stages of fact-finding hearings. (Matter of Dutchess County Dept. of Social Servs. v Mark M., 196 AD2d 196 [2d Dept 1994] [Per Curiam]; see, NY Const, art I, § 6 [under State constitutional law, the right to appear and defend in person applies to both criminal and civil actions]; see also., Matter of Daniel Aaron D., 49 *66 NY2d 788 [1980]; Carlisle v County of Nassau, 64 AD2d 15 [2d Dept 1978].)
Further, the corollary right of a respondent to face-to-face confrontation of witnesses who testify against him or her is a fundamental element of American jurisprudence. (See, Maryland v Craig, 497 US 836 [1990]; Coy v Iowa, 487 US 1012 [1988].) This precept ensures that testimony received at a trial is reliable and subject to "adversarial testing” (Maryland v Craig, supra, at 846); and this is no less the case in a civil proceeding commenced solely "to help protect children from injury or mistreatment and to help safeguard their * * * well-being.” (Family Ct Act § 1011.) The right to face-to-face confrontation of witnesses reduces the risk that an innocent person will be wrongfully implicated by a witness. This is based on the recognition that "[i]t is always more difficult to tell a lie about a person 'to his face’ than 'behind his back’. * * * [F]ace-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult.” (Coy v Iowa, supra, at 1019-1020.) Indeed, the failure to require face-to-face confrontation as a means of adversarial testing could "[call] into question the ultimate 'integrity of the fact-finding process’ ”. (Chambers v Mississippi, 410 US 284, 295 [1973], quoting Berger v California, 393 US 314, 315 [1969].)
While the foregoing principles may not be disregarded even in a situation such as the one now presented to the court, the State’s interest in safeguarding the psychological well-being of an allegedly abused child may, as a matter of necessity, permit an alternative to the face-to-face confrontation due process otherwise demands. (Maryland v Craig, supra.) Because of the fundamental constitutional interests at stake, such necessity may never be presumed; instead, it can only be found to exist after a demonstration that a particular child would suffer significant psychological trauma, not by the trial process in general, but by having to testify in the presence of a particular respondent. (Cf., supra; Department of Social Servs. v Phillip C., NYLJ, Nov. 18, 1991, at 33, col 4 [Fam Ct].)
In instances where such necessity is demonstrated, the alternative procedure employed should be one that eliminates trauma caused by the presence of a respondent, while simultaneously preserving constitutionally mandated protections to the maximum extent possible. (Cf., Waller v Georgia, 467 US 39 [1984] [any limitation of constitutional rights affecting the *67 conduct of a trial must be no broader than necessary to protect overriding State interests].) The preferred procedure, therefore, would use available two-way closed circuit television whereby the child is placed in a separate room and his or her live testimony is transmitted to the courtroom (see, CPL art 65). If such equipment is unavailable,[1] the child’s testimony should be received outside of the respondent’s presence but in the presence of all counsel. The child should be subject to cross-examination;[2] and to ensure that inquiry is made on all relevant factual and credibility issues, respondent’s counsel should be permitted to consult with his or her client prior to the commencement of such cross-examination and again prior to its conclusion. (Cf., Matter of Christina F., 74 NY2d 532 [1989]; Matter of Elena R., 54 AD2d 984 [2d Dept 1976], appeal dismissed 40 NY2d 1091 [1977].)
As set forth in Department of Social Servs. v Phillip C. (supra), an in camera interview as contemplated under Matter of Lincoln v Lincoln (24 NY2d 270 [1969]) was intended primarily to ascertain the wishes of a child in custody litigation between parents. Given the substantial constitutional interests at issue and the potential level of State interference with those interests in a child protective proceeding (see, Alsager v District Ct., 406 F Supp 10, 24 [SD Iowa 1975], affd Per Curiam 545 F2d 1137 [8th Cir 1976]), such an in camera interview of the child without the additional safeguards described above is improper and should not be utilized. (Department of Social Servs. v Phillip C., supra.)
In the present case, the Law Guardian cites Zena’s age and the allegations made as to her abuse; on that basis, he concludes that Zena faces "potential trauma that could be *68 caused by facing respondents.” The Law Guardian’s supporting papers are silent as to Zena’s current psychological status, and no offer is made to present expert testimony addressing the issue of such trauma, if an evidentiary hearing on this motion were to be held.
Accordingly, the Law Guardian has failed to demonstrate any necessity for the court to utilize the alternative procedures described above. As such, his motion is denied as a matter of law. Leave to renew is granted if the Law Guardian has additional information to present in accordance with the criteria set forth in this decision.

. CPL article 65 authorizes the experimental use of closed circuit television as a means of permitting children to testify in criminal sex offense prosecutions. While the necessary audio-visual equipment is not available in every county, or necessarily available to the Family Court, and the law authorizing this procedure is now scheduled to expire on November 1, 1996, this court is aware of several instances in which such equipment already has been used by the Family Court in various parts of the State.

. That cross-examination is intrinsic to the fact-finding process is beyond dispute. Indeed, it has been "[c]haracterized as 'the greatest legal engine ever invented for the discovery of truth’ ” (Fisch, New York Evidence § 348 [2d ed 1977], quoting 5 Wigmore, Evidence § 1367 [3d ed 1940]), and is an essential element of due process and fair treatment (see, Pointer v Texas, 380 US 400 [1965]; In re Gault, 387 US 1 [1967]; Matter of Friedel v Board of Regents, 296 NY 347 [1947]). Of course, the permissible manner and tone of cross-examination may depend on the age and abilities of the child and, therefore, is subject to the sound discretion of the Trial Judge.