In the Matter of THOMAS R. GALE et al., Appellants, v MICHELLE GRAY et al., Respondents. [834 NYS2d 553]—

Mercure, J.P. Appeal from an order of the Family Court of Otsego County (Becker, J.), entered February 21, 2006, which dismissed petitioners' application, in a proceeding pursuant to Family Ct Act article 6, for custody of respondents' child.

This appeal involves a petition by maternal grandparents to gain custody of Kobe (born in 2002), the child of their daughter, respondent Michelle Gray (hereinafter respondent).* Respondent has a history of depression, including postpartum depres-

---

* The child's father was named as a respondent but has had very little contact with the child since birth and has not participated in the proceedings.

sion, and other psychological problems, exacerbated by her experiences in suffering through a miscarriage and as the victim of violent crimes both as a teenager and as an adult. At respondent's request, petitioners took custody of the child in February 2002, when he was less than one month old, and they cared for him thereafter in their home in the Town of Milford, Otsego County. Respondent also resided with petitioners in New York or in their "seasonal" home in Massachusetts from late 2002 until the fall of 2003, when she married Robert Gray and moved into his residence. It is not disputed that Kobe thrived in petitioners' care and that petitioners brought Kobe to Massachusetts frequently to visit respondent and encourage his relationship with her.

Respondent indicates that after she began her relationship with Gray, she was diagnosed as suffering from depression alone and, through taking a single medication—as opposed to the numerous medications prescribed to treat her previously diagnosed conditions—and attending counseling, her depression was brought under control. Respondent and Gray have a son, Michael (born in 2004), who has lived with them since his birth, and both have secure jobs. Respondent contends that she became interested in obtaining custody of Kobe in 2003 and, although she communicated that desire to petitioners repeatedly, they refused to return the child to her. Petitioners commenced this proceeding after respondent sent them a letter stating that she was coming to take custody of Kobe on November 27, 2004. Following a hearing, Family Court awarded custody to respondent pursuant to a detailed transitional schedule. Petitioners appeal and we now affirm.

It is well settled that a biological parent has a right to custody of his or her child, superior to that of all others, and may not be denied custody "[i]n the absence of 'surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances'." (*Matter of Male Infant L.*, 61 NY2d 420, 427 [1984], quoting *Matter of Bennett v Jeffreys*, 40 NY2d 543, 544 [1976]; *see Matter of Bevins v Witherbee*, 20 AD3d 718, 719 [2005]). As petitioners argue, Domestic Relations Law § 72 (2) (a) provides that extraordinary circumstances include "[a]n extended disruption of custody," defined as, but not limited to, "a prolonged separation of the respondent parent and the child for at least [24] continuous months during which the parent voluntarily relinquished care and control of the child and the child resided in the household of the petitioner grandparent or grandparents" (Domestic Relations Law § 72 [2] [b]). We note, however, that a "period of separation during which [a parent is] trying to regain

custody lawfully 'is entitled to little, if any, consideration' " (*Matter of Cote v Brown,* 299 AD2d 876, 877 [2002], quoting *Matter of Dickson v Lascaris,* 53 NY2d 204, 210 [1981]; *see Matter of Male Infant L., supra* at 427-429; *Matter of Burghdurf v Rogers,* 233 AD2d 713, 715 [1996], *lv denied* 89 NY2d 810 [1997]). Other factors that may be considered in evaluating whether extraordinary circumstances exist due to an extended disruption of custody include "the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the biological parent allowed such custody to continue without trying to assume the primary parental role" (*Matter of Bevins v Witherbee, supra* at 719; *see Matter of Campbell v Brewster,* 9 AD3d 620, 622 [2004]).

Here, while the parties sharply dispute whether respondent sought to obtain custody of the child prior to November 2004, Family Court credited respondent's testimony that she began to request that the child be returned to her in 2003, when she moved from petitioners' home—where she had resided with the child for a period of approximately five months—to Massachusetts. From that time on, respondent made significant strides in controlling her mental illness, and is now living in a stable environment, married, gainfully employed and ably raising her second child. Indeed, reports from respondent's mental health providers described her as having good insight and judgment, a stable home, good parenting skills with her second baby and an affect that is "warm, stable, [and] appropriate." Upon the record before us and according deference to Family Court's assessment of the parties' credibility, we agree with the court that respondent's initial voluntary relinquishment of custody and care of the child and her history of mental illness do not rise to the level of extraordinary circumstances (*see Matter of Cortright v Workman,* 304 AD2d 862, 863 [2003]; *Matter of Cote v Brown, supra* at 877-878; *Matter of Burghdurf v Rogers, supra* at 714-715; *cf. Matter of Wilson v Smith,* 24 AD3d 562, 563 [2005]).

In light of our determination that extraordinary circumstances are not present, we do not reach the parties' arguments regarding the best interests of the child (*see Matter of Male Infant L., supra* at 427; *Matter of Campbell v Brewster, supra* at 621). Petitioners' remaining arguments have been considered and found to be lacking in merit.

Peters, Mugglin and Kane, JJ., concur. Ordered that the order is affirmed, without costs.