Matter of Byler v Byler (2022 NY Slip Op 04253)

Matter of Byler v Byler

2022 NY Slip Op 04253

Decided on July 1, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 1, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, NEMOYER, AND WINSLOW, JJ.

452 CAF 21-01187

[*1]IN THE MATTER OF MELINDA BYLER, PETITIONER-APPELLANT,
v
KENNETH BYLER AND MARY BYLER, RESPONDENTS-RESPONDENTS. 

CAITLIN M. CONNELLY, BUFFALO, FOR PETITIONER-APPELLANT.
AVERY S. OLSON, JAMESTOWN, ATTORNEY FOR THE CHILDREN. 

 Appeal from an order of the Family Court, Chautauqua County (Michael J. Sullivan, J.), entered August 5, 2021 in a proceeding pursuant to Family Court Act article 6. The order, inter alia, awarded respondent Mary Byler sole custody of the subject children. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: In this proceeding pursuant to Family Court Act article 6, petitioner mother appeals from an order that, inter alia, determined following a hearing that respondent Mary Byler (aunt), the subject children's paternal aunt, established extraordinary circumstances, ordered that it was in the best interests of the children to remain in the care of the aunt, awarded the aunt sole custody and physical placement of the children, and awarded the mother visitation in the form of weekly video/electronic communication with the children. We affirm.
" '[A]s between a parent and a nonparent, the parent has a superior right to custody that cannot be denied unless the nonparent establishes that the parent has relinquished that right because of surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances . . . The nonparent has the burden of proving that extraordinary circumstances exist, and until such circumstances are shown, the court does not reach the issue of the best interests of the child' " (Matter of Orlowski v Zwack, 147 AD3d 1445, 1446 [4th Dept 2017]; see Matter of Bennett v Jeffreys, 40 NY2d 543, 545-546 [1976]; Matter of Byler v Byler, 185 AD3d 1403, 1404 [4th Dept 2020]). That rule " 'applies even if there is an existing order of custody concerning that child unless there is a prior determination that extraordinary circumstances exist' " (Matter of Wolfford v Stephens, 145 AD3d 1569, 1570 [4th Dept 2016]; see Byler, 185 AD3d at 1404; Orlowski, 147 AD3d at 1446). " 'Examples of extraordinary circumstances found by courts include prolonged separation, disruption of custody for a prolonged period of time and attachment of the child to the custodian . . . , sibling separation . . . , psychological bonding of the child to the custodian and potential harm to the child . . . , the biological parent's abdication of parental rights and responsibilities . . . and the child's poor relationship with the biological parent' " (Matter of Hilkert v Parsons-O'Dell, 187 AD3d 1675, 1676 [4th Dept 2020], lv denied 36 NY3d 905 [2021]).
The mother contends that Family Court erred in determining that extraordinary circumstances existed, thereby warranting an inquiry into the best interests of the children, because the evidence at the hearing was insufficient to meet the aunt's burden. We reject that contention. Preliminarily, contrary to the mother's assertion, the court's "determination to credit the [aunt's] testimony over the mother's in determining the existence of extraordinary circumstances is entitled to great deference" and, here, we see no reason to disturb that credibility determination (Matter of Johnson v Wellington, 185 AD3d 1549, 1549-1550 [4th Dept 2020]; see Matter of Miner v Torres, 179 AD3d 1490, 1491 [4th Dept 2020]). As a further preliminary [*2]matter, we reject the mother's challenge to the admission at the hearing of threatening text messages and website posts made by her inasmuch as she waived that challenge by stipulating to the admission of that evidence (see Matter of DeViteri v Saldana, 95 AD3d 1221, 1222 [2d Dept 2012]). Additionally, the court did not err in according that evidence appropriate weight after crediting the hearing proof that the mother was the sender of the text messages and the author of the website posts (see generally People v Tucker, 200 AD3d 1584, 1586 [4th Dept 2021], lv denied 38 NY3d 954 [2022]; Matter of Gorton v Inman, 147 AD3d 1537, 1538 [4th Dept 2017]; Matter of Colby II. [Sheba II.], 145 AD3d 1271, 1273 [3d Dept 2016]).
With respect to the substance of the court's extraordinary circumstances determination, we reject the mother's assertion that the court improperly relied upon the approximately five-year separation between the mother and the children. It is well established that " 'the child may be so long in the custody of the nonparent' that separation from the natural parent amounts to an extraordinary circumstance, especially when 'the psychological trauma of removal is grave enough to threaten destruction of the child' " (Matter of Male Infant L., 61 NY2d 420, 428 [1984], quoting Bennett, 40 NY2d at 550). Conversely, however, when "the separation between the natural parent and child is not in any way attributable to a lack of interest or concern for the parental role, that separation does not amount to an extraordinary circumstance and, indeed, deserves little significance" (id. at 429; see Matter of Dickson v Lascaris, 53 NY2d 204, 209-210 [1981]; Matter of Cote v Brown, 299 AD2d 876, 877-878 [4th Dept 2002]). Here, while the mother characterizes her filing of more than 85 petitions as legitimate attempts to regain custody of the children during the approximately five years that they were living with the aunt, that characterization is refuted by the record. The court found that the mother's numerous petitions, only a few of which raised issues that fell within the jurisdiction of Family Court, constituted abusive and harassing litigation that unfairly burdened the aunt by requiring her to appear to avoid default, thereby justifying its imposition of judicial screening for any future petitions. The mother does not challenge that finding on appeal. The mother's numerous petitions are therefore appropriately viewed as abusive and vexatious litigation rather than "serious attempts to regain custody or resume a parental role in the child[ren's] li[ves]" (Orlowski, 147 AD3d at 1447; cf. Dickson, 53 NY2d at 209-210; Cote, 299 AD2d at 877-878).
In any event, even if the prolonged separation alone is entitled to little significance here, the combination of that factor along with others present on this record sufficiently establish the existence of extraordinary circumstances. Although the mother would have us review the factors as though each was the only one present, we note that "[t]he extraordinary circumstances analysis must consider 'the cumulative effect' of all issues present in a given case and not view each factor in isolation" (Matter of Pettaway v Savage, 87 AD3d 796, 797 [3d Dept 2011], lv denied 18 NY3d 801 [2011]). We conclude that the aunt met her burden of establishing that extraordinary circumstances existed based upon the cumulative effect of, among other things, the mother's voluntary relinquishment of physical custody of the children, the subsequent protracted separation between the mother and the children, the psychological bonding of the children to the aunt and potential harm to the children if removed from the aunt's custody, the mother's failure to adequately address her ongoing mental health issues and, importantly, the series of incidents in which the mother engaged in erratic, unstable, threatening, and psychologically abusive behavior and communication directed at the children that justifiably rendered the children fearful of the mother (see Hilkert, 187 AD3d at 1676; Matter of Cheryl YY. v Cynthia YY., 152 AD3d 829, 833 [3d Dept 2017]; Matter of Thomas v Armstrong, 144 AD3d 1567, 1568 [4th Dept 2016], lv denied 28 NY3d 916 [2017]; Matter of Vincent A.B. v Karen T., 30 AD3d 1100, 1101 [4th Dept 2006], lv denied 7 NY3d 711 [2006]).
With respect to the court's custody and visitation determination, the mother does not dispute that it is in the best interests of the children to remain in the custody of the aunt. Instead, the mother challenges only the court's determination to replace the provision of the prior order providing for in-person supervised visitation twice per week with supervised video or electronic communication once per week, which would continue even after the mother's release from jail, where she had been placed following her arrest during the pendency of this proceeding (see Matter of Magana v Santos, 70 AD3d 1208, 1209-1210 [3d Dept 2010]). We conclude that the mother's challenge lacks merit. Even assuming, arguendo, that the court did not set forth sufficient findings with respect to the best interests of the children on the issue of the mother's visitation, we conclude that reversal is not thereby warranted inasmuch as the record is adequate for us to make a best interests determination, and the record supports the result reached by the [*3]court (see Matter of Unczur v Welch, 159 AD3d 1405, 1406 [4th Dept 2018], lv denied 31 NY3d 909 [2018]; Matter of Montalbano v Babcock, 155 AD3d 1636, 1638 [4th Dept 2017], lv denied 31 NY3d 912 [2018]). In particular, the credible evidence that the mother's prior in-person supervised visitation was already discontinued, coupled with the mother's erratic and threatening behaviors, including repeatedly appearing uninvited at the aunt's house while approaching or communicating with the children in a manner that caused them genuine fear, provides a sound and substantial basis supporting the court's determination to limit the mother's visitation to weekly supervised video or electronic communication only (see Matter of Erica S. [Nancy R.E.—Michael A.S.], 135 AD3d 864, 865-866 [2d Dept 2016]).
Finally, the mother also seeks to challenge the court's determination that the aunt met her burden on her separate petition pursuant to Family Court Act article 8 of establishing that the mother committed family offenses. Despite the fact that the order of protection issued on the aunt's family offense petition, which constitutes the order of disposition in the article 8 proceeding (see Family Ct Act § 841 [d]; see also § 1112 [a]), clearly advised the mother of her obligation to timely appeal from that order (see
§ 1113), the mother failed to file a notice of appeal from the order of protection and, thus, her challenge to the court's determination that she committed family offenses is not properly before us (see Matter of Gardner v Gardner, 69 AD3d 1243, 1244 n 1 [3d Dept 2010]; Matter of Houck v Garraway, 293 AD2d 782, 783 n 2 [3d Dept 2002]). The mother's contention that the family offense determination is nonetheless properly raised under the circumstances of this appeal is without merit.
Entered: July 1, 2022
Ann Dillon Flynn
Clerk of the Court